867 A.2d 355

**William A. KELLY, III**

v.

**BALTIMORE COUNTY, Maryland.**

**No. 2595, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Jan. 31, 2005.

Victor D. Sobotka (Schlachman, Belsky & Weiner, P.A., on brief), Towson, for appellant.

William J. Bower, III (Jay L. Liner, Cty. Atty., on brief), for appellee.

Panel EYLER, DEBORAH S., BARBERA and MEREDITH, JJ.

MEREDITH, J.

William A. Kelly, III, appeals from a judgment of the Circuit Court for Baltimore County that granted summary judgment in favor of his employer, Baltimore County ("the County"), and reversed a decision by the Maryland Workers' Compensation Commission ("the Commission"). Kelly, a Baltimore County police officer, filed a claim with the Commission after being involved in an accident while operating his police cruiser, which was hit by a drunk driver. Kelly claimed he underwent surgery on his lower back as a direct consequence of that accident, which he claimed aggravated a prior back injury. The County opposed Kelly's claim for benefits, alleging that Kelly's surgery stemmed solely from the pre-existing back injury, and not from the employment-related accident. The Commission ruled in Kelly's favor.

The County challenged the decision of the Commission by filing a petition for *de novo* judicial review in the Circuit Court for Baltimore County. In the circuit court, the County filed a motion for summary judgment. In its motion, the County claimed the Commission's decision was incorrect as a matter of law because Kelly failed to submit any medical expert testimony specifically attributing the cause of his back injury to the employment-related accident. The County argued that Kelly was required to produce expert testimony as to causation because the issue involves a complex medical question. The circuit court granted the County's motion and entered summary judgment in its favor. Kelly filed an appeal to this Court. Because we conclude that the case should not have been disposed of by way of summary judgment, we shall reverse the decision of the circuit court.

## QUESTION PRESENTED

The question before us is whether a circuit court, in a *de novo* appeal initiated by the employer from a ruling by the Commission in favor of the employee, can, on summary judgment, reverse the ruling of the Commission and enter judgment in favor of the employer if the employee does not produce expert medical testimony as to causation. Under the circumstances of this case, we hold that it was error for the circuit court to overturn the ruling of the Commission on summary judgment.

## BACKGROUND

On October 24, 2002, Kelly was on routine patrol, driving a marked police car, when he was struck by an oncoming vehicle. The driver of the other vehicle, who was impaired by alcohol, turned the wrong way down a one-way street and crashed into the driver's side of Kelly's car. According to Kelly, as a result of the accident, Kelly re-injured his back, which had been problematic for some time. He obtained medical care on October 25, 2002, at which time he was diagnosed with a lumbar sprain and placed on modified activity with some restrictions.

On October 28, 2002, the County filed a first report of injury, informing the Commission that Kelly's accident caused him to suffer an injury to his lower back (lumbar and sacral). Subsequently, on January 20, 2003, Kelly filed his own employee's claim with the Commission, and he also claimed his lower back was injured when his vehicle was struck. On January 27, 2003, prior to the Commission awarding Kelly any compensation for the October 2002 employment-related injury, Kelly underwent surgery for the decompression of a disc in his back.

The Commission issued Kelly an award on February 25, 2003, finding that he had sustained an accidental injury arising out of the course of his employment, and that he was temporarily totally disabled as a result of his injuries. The County was ordered to provide Kelly with weekly compensation dating

back to November 3, 2002, and to pay for his medical treatment and other necessary medical services as provided by Md.Code (1957, 2002 Repl.Vol.), Labor and Employment Article ("L.E."), § 9–660 through § 9–664, and § 9–689.

On April 14, 2003, the County filed issues to be heard by the Commission, questioning whether Kelly's surgery was causally related to his accident of October 24, 2002. A hearing was held by the Commission on July 31, 2003.

At the Commission hearing, the County argued that the back injury that led to Kelly's surgery was actually a non-work-related injury suffered in December 2001 while playing basketball. Evidence was presented in the form of medical reports, which indicated Kelly had been receiving treatment since the December 2001 incident for a disc herniation in the same area of his lower back where his 2003 surgery had been performed.

The County submitted a letter report from Dr. Stephen R. Matz, a physician hired by the County to conduct an "independent medical evaluation" of Kelly. The County argued that it was Dr. Matz's opinion that Kelly's back surgery was not causally connected to the employment-related motor vehicle accident, but instead resulted from his 2001 basketball injury. Additionally, the County submitted two letters concerning the surgery from Kelly's treating physician, Dr. Ira Fedder, which the County argued did not expressly connect the surgery with the injury Kelly suffered from the motor vehicle accident. The County argued that Dr. Fedder's omission of an opinion as to causation was significant.

The documentary evidence presented by the County reflected that Dr. Fedder had discussed back surgery with Kelly in September 2002 during the course of treatment for the December 2001 basketball injury. The documents further reflected that Dr. Fedder suggested that, before resorting to surgery, Kelly should first undergo a series of injections, known as selective nerve root block, to see if that procedure would eliminate his back pain.

Dr. Fedder referred Kelly to Dr. P. Bobbie Dey, who gave Kelly nerve root block injections on the following four dates: October 10, 2002, October 17, 2002, October 31, 2002, and November 7, 2002. Kelly testified at the Commission hearing that after the October 17, 2002 injection, he was doing well and was not going to receive the third injection. However, after the motor vehicle accident on October 24, 2002, Kelly's pain returned, and he decided to receive the third and fourth injections.

Dr. Dey's patient reports regarding Kelly were submitted at the Commission hearing. They corroborated that Kelly was experiencing pain when he visited her on October 31, 2002, one week after his involvement in the motor vehicle accident. Her report from that visit stated: "[T]he patient was 100 percent improved. Recently, the patient had a side impact, work-related motor vehicle accident since which time the pain in his legs have returned. I recommend no streak [sic] duties as a police officer for the [next] 6 to 8 months."

Kelly submitted additional medical records at the Commission hearing regarding the 2001 back injury. He admitted that Dr. Fedder had discussed the possibility of surgery with him prior to the motor vehicle accident that occurred on October 24, 2002, but he asserted that his condition had improved substantially in response to the nerve root injections he received, and that he had ruled out surgery until the accident caused the pain to return. Kelly argued that, while the motor vehicle accident was not the original cause of his back pain, the accident aggravated the old injury and caused him to need surgery.

Kelly also testified that he did not miss any time from work as a result of the December 2001 basketball injury, except for two to three days right after the injury occurred. He testified that he had been in incidents involving fights with suspects since he suffered the original injury, but he had never reinjured his back until the motor vehicle accident on October 24, 2002.

The Commission issued a decision in Kelly's favor, finding: "[T]he accidental injury sustained on October 24, 2002 exacerbated [Kelly's] pre-existing condition requiring the need for surgery. . . ." The County was ordered to pay for all of Kelly's medical bills that were related to the January 27, 2003 surgery, and to provide Kelly with compensation for his recovery period following the surgery.

The County sought judicial review of the Commission's decision in the Circuit Court for Baltimore County pursuant to Md. Rule 7–201, and requested a jury trial. The County then filed a motion for summary judgment, requesting that the court summarily reverse the decision of the Commission and enter judgment in its favor. Relying on the record from the proceedings before the Commission, and without any supplemental evidence offered by way of affidavit or deposition testimony, the County argued that the case involves a complex medical question, which requires the claimant to produce medical testimony to connect the need for surgery and treatment to the employment-related accident.

Kelly opposed the County's motion, arguing that there was sufficient medical evidence in the record before the Commission to support his claim and the Commission's finding that the surgery was related to the accident. Kelly further asserted that there was a genuine dispute concerning the material fact of whether the aggravation of his back injury and the surgery were causally connected to the motor vehicle accident. In response to the motion, Kelly offered no supplemental evidence, but instead relied on the evidence in the record from the Commission. Kelly also argued that the Commission's finding of causation was entitled to a presumption that it was correct.

After a hearing, the circuit court, without opinion, granted the County's motion for summary judgment and entered judgment in the County's favor. Kelly noted a timely appeal.

### JUDICIAL REVIEW

In *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 689 A.2d 1301 (1997), Judge Moylan, writing for this Court, de-

scribed the two different procedural modes that can be pursued by a party seeking judicial review of a decision of the Commission:

> One is pursuant to Labor and Employment Art. § 9–745(e), which replicates the routine appeal process from administrative agency decisions generally. According to that modality, the circuit court reviews the Commission's action on the record and determines whether the Commission 1) acted within its power and 2) correctly construed the law and facts.
>
> The other and more unusual modality is that spelled out by § 9–745(d), which provides for what is essentially a trial *de novo.*

*Id.* at 364, 689 A.2d 1301.

Judge Moylan discussed the difference between these two forms of appeal in *General Motors Corp. v. Bark,* 79 Md.App. 68, 76, 555 A.2d 542 (1989):

> [I]t is the first of these appeal modes that requires the circuit judge to determine under Section [9–745(e) ]:
>
> 1) "whether the Commission has justly considered all of the facts concerning the injury,"
>
> 2) "whether it has exceeded the powers granted it by the article," and
>
> 3) "whether it has misconstrued the law and the facts applicable in the case decided"
>
> and then directs him to affirm "the decision of the Commission" if he determines "that the Commission has acted within its powers and has correctly construed the law and facts." Thus far, there is nothing of a *de novo* nature involved. Thus far, a review by the circuit court of the record before the Commission would suffice. The statutory direction to affirm an error-free Commission decision would not apply, however, to the alternative appeal mode of *de novo* trial. Indeed, once the circuit court embarks upon its *de novo* fact-finding mission, it is totally unconcerned with whether the Commission "correctly construed the law and facts" or not.

In the instant case, the second form of judicial review was elected by the County, which requested a trial by jury. Although the jury trial mode of judicial review is a *de novo* type of proceeding, L.E. § 9–745(b) provides: "(1) [that] the decision of the Commission is presumed to be *prima facie* correct; and (2) that the party challenging the decision has the burden of proof." As this Court noted in *S.B. Thomas,* the statutory presumption of correctness, coupled with a *de novo* factual determination by a jury, give rise to a specific type of review that has been called an "essential trial *de novo,*" which differs from a "true trial *de novo.*" 114 Md.App. at 366, 689 A.2d 1301.

Judge Moylan described the difference between these two *de novo* proceedings in *General Motors Corp.* and in *S.B. Thomas.* A true trial *de novo* was described as one in which all of the parties were put back at square one to begin again just as if the adjudication being challenged had never occurred. Accordingly, "[w]hichever party ... had the burden of production and the burden of persuasion before the Commission would again have those same burdens before the circuit court." *General Motors Corp.,* 79 Md.App. at 79, 555 A.2d 542. An "essential trial *de novo*" differs, however, due to the conditions required by L.E. § 9–745(b)—that the decision of the Commission be presumed as *prima facie* correct, and that the burden of proof be placed on the party attacking the decision.

As Judge Moylan noted, these conditions become relatively meaningless if it is the claimant who loses before the Commission and then petitions for judicial review in the circuit court. *S.B. Thomas,* 114 Md.App. at 366, 689 A.2d 1301 (quoting *General Motors,* 79 Md.App. at 79–80, 555 A.2d 542). In that situation, the claimant has the same burden of proving a *prima facie* case at the circuit court level that he had below at the Commission hearing. Additionally, the claimant must persuade the circuit court by a preponderance of the evidence, just as he was required to persuade the Commission at the original hearing.

The requirements of L.E. § 9–745(b) take on a different meaning, however, when the claimant prevails at the Commission hearing below, and the employer challenges the Commission's decision. In that situation, the allocation of the burdens switches. This Court described the dramatic impact of L.E. § 9–745(b) upon the circuit court's review of a case in which the employer lost before the Commission:

> In such a case, the decision of the Commission is, *ipso facto,* the claimant's *prima facie* case and the claimant runs no risk of suffering a directed verdict from the insufficiency of his evidence before the circuit court. Indeed the successful claimant, as the non-moving party on appeal, has no burden of production. The qualifying language [of L.E. § 9–745(b) ] also gives the successful claimant below the edge— the tie breaker—if the mind of the fact finder (judge or jury) is in a state of even balance. The tie goes to the winner below.

*S.B. Thomas,* 114 Md.App. at 367, 689 A.2d 1301.

■ Therefore, in an essential *de novo* review, when the employer pursues judicial review of an unfavorable decision by the Commission, the employer must meet the burden of establishing a *prima facie* case and must bear the burden of persuading the fact finder by a preponderance of the evidence. Additionally, the jury will be informed that the decision of the Commission is presumed to be correct, and that the employer has the burden of overcoming that presumption. *Id.* at 367– 68, 689 A.2d 1301.

In the instant case, Kelly, the claimant, received a decision in his favor from the Commission, awarding him benefits for the back injury that he claimed he sustained from his employment-related motor vehicle accident. The Commission specifically found that "the accidental injury sustained on October 24, 2002 exacerbated [Kelly's] pre-existing condition requiring the need for back surgery." When the County elected to seek judicial review of the Commission's decision by way of an essential *de novo* proceeding, the allocation of the burdens switched. At the circuit court level, the County was required

to produce a *prima facie* case establishing that there was no causal connection between the employment-related accident and the need for Kelly to undergo back surgery. The County also bore the burden of persuading the jury by a preponderance of the evidence that the accident was not causally related to the surgery.

This case took a procedural turn, however, when the County decided to file its motion for summary judgment in an effort to circumvent a jury trial. In its motion, the County argued that Kelly's claim involves "complex medical questions which require[ ] a doctor to relate the surgery and treatment to a reasonable degree of medical certainty to the date of accident. No doctor has done so." The County argued that because Kelly suffered from a pre-existing condition, the question of whether the employment-related accident exacerbated his condition, causing him to need surgery, was a complicated medical question which required "a physician's expert opinion to a degree of medical certainty." The County argued that, because Kelly did not introduce such evidence during the Commission hearing, "the Claimant failed to meet his burden of proof as a matter of law." The circuit court granted the County's motion for summary judgment "as a matter of law," without any further elaboration.

In *General Motors Corp.* and *S.B. Thomas*, this Court affirmatively stated: "[T]he decision of the Commission is, *ipso facto*, the claimant's *prima facie* case and the claimant runs no risk of suffering a directed verdict from the insufficiency of his evidence before the circuit court." *S.B. Thomas*, 114 Md.App. at 367, 689 A.2d 1301; *General Motors*, 79 Md.App. at 80, 555 A.2d 542. It follows that the risk of an adverse summary judgment is also minimal, although, as we shall explain, not non-existent. We need not attempt to address all possible permutations of situations that may arise in the future if an employer who has requested essential *de novo* review of an adverse ruling from the Commission files a motion for summary judgment in the circuit court. We need only decide whether the circuit court correctly granted the

County's motion in this case on the record before us. We conclude that when the appealing employer files a motion for summary judgment asserting an argument that requires a resolution of an issue of fact, and the underlying facts are susceptible of more than one permissible inference, because the claimant enjoys the presumption of correctness of the Commission's decision, summary judgment is not appropriate.

**Summary Judgment and Workers' Compensation Appeals**

Prior to an amendment that became effective July 1, 2004, Maryland Rule 2–501(a) stated: "Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Several cases have indicated that the normal rules governing summary judgment apply in "appeals" from the Workers' Compensation Commission. *See, e.g., Egypt Farms, Inc. v. Lepley*, 49 Md.App. 171, 176, 430 A.2d 122 (1981). *See also Dawson's Charter Serv. v. Chin*, 68 Md.App. 433, 440, 511 A.2d 1138 (1986) ("Summary judgment may be invoked to prevent an unnecessary trial in a worker compensation appeal, just as in any other action."); and *Maloney v. Carling Nat'l Breweries, Inc.*, 52 Md.App. 556, 559–60, 451 A.2d 343 (1982) (summary judgment rules apply to workers' compensation appeals).

The Court of Appeals summarized procedures for considering a summary judgment motion in *Peck v. Baltimore County*, 286 Md. 368, 410 A.2d 7 (1979), which this Court quoted in *Egypt Farms* and *Maloney*. In *Peck*, the Court of Appeals stated:

We have said many times that the function of a summary judgment proceeding is not to try the case or to attempt to resolve factual issues, but to ascertain whether there is a dispute as to a material fact sufficient to provide an issue to be tried.... Moreover, all inferences must be resolved against the moving party when a determination is made as to whether a factual dispute exists, even if the underlying facts are undisputed.... "[E]ven where the underlying

facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact."

*Peck,* 286 Md. at 381, 410 A.2d 7 (citations omitted).

The Court of Appeals demonstrated the appropriate application of the summary judgment rules in a workers' compensation case in *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 265 A.2d 256 (1970), in which it reversed a decision by the circuit court that had granted summary judgment in the claimant's favor. Quoting from another workers' compensation case, *Talley v. Dept. of Correction,* 230 Md. 22, 185 A.2d 352 (1962), the Court in *Fenwick* stated:

"It is true that where the facts are conceded, undisputed, or uncontroverted, and the inferences to be drawn therefrom are plain, definite and undisputed ..., their legal significance is a matter of law to be determined by the court, but where the facts, or inferences therefrom, or both, are in dispute, such questions are to be determined by a jury ..., and the jury ... is entitled to weigh and evaluate the evidence, and may disbelieve evidence, even though it is 'uncontradicted.'"

*Fenwick,* 258 Md. at 139, 265 A.2d 256.

In *Fenwick,* the circuit court granted summary judgment for the claimant, a dependent child who had lost her father in an employment-related accident. The circuit court found there was no dispute as to any material fact; it concluded that the claimant-child was totally dependent on her deceased father and should be awarded compensation. The Court of Appeals reversed the circuit court's decision, stating:

[I]n a summary judgment proceeding where there is a reasonable basis for a dispute over material factual inferences, it is not the function of the court to resolve them as a matter of law. The court's function at this stage of the proceedings is to determine if there is a genuine dispute of fact, including factual inferences. Implicit in [the court's] overturning the findings of the Commission is a conclusion

that the inferences they drew were wrong. While it is possible the Commission could have been dead wrong, the facts presented here suggest a reasonable basis for a dispute over the inferences to be drawn from them. That being the case summary judgment was inappropriate.

*Id.* at 140, 265 A.2d 256.

Similarly, in *Egypt Farms, supra,* this Court reversed a decision by the circuit court that had granted summary judgment in the claimant's favor and affirmed an award by the Commission. Noting that one of the permissible inferences from the testimony presented to the Commission was that the employee's death had arisen out of and in the course of his employment, this Court stated that, "the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact." 49 Md.App. at 176, 430 A.2d 122. This Court reversed the circuit court's summary judgment, concluding: "The court's error was in resolving the disparate inferences in the claimant's favor on summary judgment. In doing so, it acted as a trier of fact, which was not its function at that point." *Id.* at 182, 430 A.2d 122.

In the instant case, we also conclude that summary judgment was inappropriate. The main issue in the case—whether Kelly's employment-related back injury was causally connected to his back surgery—was in dispute between the parties, and the evidence presented to the Commission permitted more than one inference to be drawn therefrom.

Kelly, who presented medical reports that referred to both his pre-existing December 2001 back injury and his employment-related October 2002 injury, also testified before the Commission that his condition had improved after receiving the first two nerve block injections. He further testified that, prior to the 2002 auto accident, he was not going to undergo the surgery. Kelly introduced a medical record dated October 10, 2002, which made reference to back and leg pain prior to receiving the injection on that date. One week later, when Kelly appeared for a second injection on October 17, 2002, Dr. Dey recorded a note that reflected: "the patient does not

report any further leg pain." When Kelly was next seen by Dr. Dey, within one week after the auto accident, Dr. Dey's medical report stated: "[T]he patient was 100 percent improved," but "[r]ecently, the patient had a side impact, work-related motor vehicle accident since which time the pain in his legs have [sic] returned." Additionally, Kelly testified that he missed only two to three days of work right after the December 2001 injury, and had been in incidents involving fights with suspects, but had never re-injured his back until the October 2002 motor vehicle accident.

This evidence gave rise to permissible inferences from which the Commission could have rationally concluded that the employment-related accident "exacerbated [Kelly's] pre-existing condition requiring the need for surgery. . . ." Likewise, it met the test for sufficiency of the evidence reiterated by this Court in *Starke v. Starke,* 134 Md.App. 663, 761 A.2d 355 (2000): "In any case, civil or criminal, to meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved." *Id.* at 679, 761 A.2d 355 (*quoted in Keystone Masonry Corp. v. Hernandez,* 156 Md.App. 496, 506, 847 A.2d 493 (2004)). Moreover, to the extent other permissible inferences could be drawn from this evidence, the inferences should have been resolved against the County—the moving party—as stated in *Peck, supra,* 286 Md. at 381, 410 A.2d 7 ("all inferences must be resolved against the moving party when a determination is made as to whether a factual dispute exists"). The circuit court failed to do so.

## Expert Medical Testimony

The County contends that summary judgment was appropriate in this case because the issue of causation amounted to a complicated medical question that required expert medical testimony to establish causal connection. The County claims that Kelly failed to submit any medical testimony that affirmatively establishes causation, and that in the absence of such testimony, the circuit court was correct in granting summary judgment in its favor as a matter of law.

Two cases cited by the parties that address the necessity of expert medical testimony are helpful in resolving the procedural question before us: *American Airlines Corporation v. Stokes*, 120 Md.App. 350, 707 A.2d 412 (1998); and *S.B. Thomas, supra*, 114 Md.App. 357, 689 A.2d 1301. Although the claimant prevailed in *S.B. Thomas*, and the employer prevailed in *American Airlines*, the difference in the outcomes is explained not by this Court's ruling regarding the need for expert medical testimony in those particular cases, but rather by an analysis of the more fundamental question of how a claimant may meet the burden of production of evidence.

The appeal to this Court in *S.B. Thomas* also focused on whether the causation of the claimant's back injury was a complicated medical question. Addressing the issue, this Court concluded that if a complicated medical question was involved, whether expert medical testimony was needed to establish a legally sufficient *prima facie* case depended on which party bore the burden of production at the *de novo* trial. 114 Md.App. at 361, 689 A.2d 1301. If it is determined that the case involves a complicated medical question, "the focus then will turn to whether expert medical testimony is required to establish a legally sufficient, *prima facie* case of, *depending on the allocation of the burden of production,* either 1) a causal relationship or 2) the absence of a causal relationship between an earlier traumatic event and the subsequent herniation." *Id.* (Emphasis added.)

In *S.B. Thomas*, the claimant was the prevailing party before the Commission, and in the circuit court he was able to satisfy his burden of producing a *prima facie* case by simply relying on the presumption of correctness of the Commission's ruling. As stated previously:

> In such a case, the decision of the Commission is, *ipso facto,* the claimant's *prima facie* case and the claimant runs no risk of suffering a directed verdict from the insufficiency of his evidence before the circuit court.

114 Md.App. at 366–67, 689 A.2d 1301. We further noted that, because the claimant prevailed before the Commission, he "no

longer bore any obligation to prove causation; that had become a 'given' in the case." *Id.* at 368, 689 A.2d 1301. We emphasized this point, stating:

> The [claimant] was not required to prove anything. He had no burden of production. Even on the question of ultimate persuasion, had the case gone that far, he could have offered nothing and simply relied on the failure of the [appealing employer] to rebut the presumption of correctness of the Commission's earlier ruling.

114 Md. at 369, 79 A. 1007.

In the instant case, Kelly was the prevailing party before the Commission. Accordingly, the favorable ruling from the Commission was, to paraphrase *S.B. Thomas, ipso facto,* Kelly's *prima facie* case, and he ran no risk of suffering an adverse summary judgment based upon the insufficiency of his evidence before the circuit court. As the successful claimant before the Commission, and as the non-moving party on appeal, Kelly had no burden of production in the circuit court proceedings.

■ The County, however, had the burden of establishing a legally sufficient *prima facie* case that the Commission was wrong to find a causal relationship between Kelly's surgery and the October 2002 employment-related accident. As the party appealing the Commission's decision, the County was required to establish by a preponderance of the evidence that Kelly was not entitled to the award made by the Commission. *See S.B. Thomas,* 114 Md.App. at 385, 689 A.2d 1301 (non-prevailing party has "burden of proving, from the ground up, an affirmative case" with respect to causation).

The result would have been just the opposite if Kelly had lost before the Commission and Kelly had initiated the *de novo* review in the circuit court. This Court's decision in the *American Airlines* case illustrates the different burden faced by an appealing claimant who has lost before the Commission. In *American Airlines,* the claimant, who had lost before the Commission, had pursued *de novo* review in the circuit court and then succeeded in obtaining a jury verdict in his favor

even though he produced no expert medical evidence on the complicated medical issue presented in that case. The trial judge refused to grant the employer's motion for judgment notwithstanding the verdict. When the employer appealed to this Court, however, we reversed, stating:

> The appellee, as the claimant, obviously carried his burden of persuasion at the circuit court level, for the jury rendered a verdict in his favor. The pertinent question before us, however, is whether the appellee carried his burden of initial production so as to have entitled him even to have the jury consider the case. If the appellee failed to meet that burden of production, the trial court committed error in denying the appellant's Motion for Judgment N.O.V.

120 Md.App. at 353, 707 A.2d 412.

Since the employer in the *American Airlines* case was the prevailing party below, the claimant was obligated to produce evidence of all elements of a *prima facie* case, including sufficient evidence of causation, in the circuit court proceedings. Because the causation issue was, under the facts of that case, a "complicated medical question" requiring expert medical testimony to resolve, *id.* at 363–64, 707 A.2d 412, and the claimant could not rely upon a favorable finding of the Commission, the claimant failed to meet his initial burden of production by failing to present supporting expert testimony. We concluded: "Absent such expert medical testimony, the evidence of the claimant[ ] in this case was not legally sufficient to have permitted the case to go to the jury. . . ." *Id.* at 364, 707 A.2d 412.

Whether the causation issue is deemed a "complicated medical question" requiring expert medical testimony cannot be reduced to a "hard and fast rule controlling all cases." *Id.* at 382–83, 707 A.2d 412. However, we need not decide whether the causation issue in Kelly's case is a complicated medical question. Even if the causation issues presented in Kelly's case were complicated medical issues, we conclude, based upon our holding in *S.B. Thomas,* that the circuit court erred in

granting the employer's motion for summary judgment against a claimant who enjoyed the presumption of correctness of a favorable ruling of the Commission. As stated previously, because Kelly prevailed before the Commission, he "no longer bore any obligation to prove causation; that had become a 'given' in the case." *Id.* at 368, 689 A.2d 1301. Instead, the County, as the party attacking the presumption of the Commission's decision, bore the obligation of proving the absence of causation.

Previous caselaw has demonstrated the importance of recognizing the statutory requirement, stated in L.E. § 9–745(b)(1), that the Commission's decision be presumed *prima facie* correct. *See Newell v. Richards*, 323 Md. 717, 732, 594 A.2d 1152 (1991) (Court of Appeals emphasized the importance of the presumption, noting that "the Worker's Compensation Commission is an administrative agency and was created specifically to develop an expertise in its field"); and *Kelly Catering, Inc. v. Holman*, 96 Md.App. 256, 271–72, 624 A.2d 1300 (1993), (Court of Special Appeals stated: "It is, of course, beyond dispute—and therefore rarely stated—that the [Commission] possesses considerable expertise in interpreting and applying the Workers' Compensation statutes. . . ."), *aff'd*, 334 Md. 480, 639 A.2d 701 (1994).

In *Holman v. Kelly Catering, Inc.*, 334 Md. 480, 639 A.2d 701 (1994), the Court of Appeals analyzed the legislative intent behind L.E. § 9–745(b), noting that the statute has two distinct yet connected requirements: (1) that the decision of the Commission be presumed as *prima facie* correct, and (2) the party challenging the Commission's decision has the burden of proof. The appellant in that case argued that both provisions of L.E. § 9–745(b) merely anticipated that the Commission's decision will be used as a means for shifting the burden of proof at trial. Rejecting that contention, the Court stated:

[B]y including both of these provisions, the legislature intended that the Commission's decision have a greater effect than merely placing the burden of proof on the party who challenges that decision.

Section 9–745(b)(2) already explicitly shifts the burden of proof to the appealing party. Thus, if the only effect of § 9–745(b)(1)'s presumption of *prima facie* correctness is to place the burden of proof on the party appealing the decision, this provision would be superfluous in light of subsection (b)(2).

*Id.* at 486, 639 A.2d 701.

In *Holman,* the Court of Appeals also rejected the appellant's contention that the decision of the Commission is not required to be presented to the jury, noting: "In order to effectuate the legislature's mandate that the Commission's 'decision ... is presumed to be prima facie correct,' the jury should know *what* decision is presumed to be correct and *who* made that decision." *Id.* The Court went on to conclude: "[I]f the jurors are told that the decision is *prima facie* correct, they obviously will consider it in weighing whether the party challenging the Commission's decision has met its burden of proof by a preponderance of the evidence." *Id.* at 486–87, 639 A.2d 701.

Although the instant case was decided by summary judgment before it was presented to a jury, the importance of L.E. § 9–745(b) and the presumption of correctness of the Commission's decision are significant to our consideration of whether the County successfully challenged the Commission's decision and demonstrated that a factual dispute did not exist. We conclude that the County did not successfully clear that hurdle.

At the hearing on the motion for summary judgment, the evidence presented to the circuit court in support of the County's motion consisted of the same record that was presented to the Commission. We recognize that the transcript of testimony taken before the Commission is sometimes submitted in lieu of an affidavit supporting a motion for summary judgment (*see* Theodore B. Cornblatt, *Appellate Practice and Procedure,* in *Hot Tips in Workers' Compensation* (MICPEL 2003)), and in this case, the County submitted no additional evidence at the motions hearing other than that which it had

presented to the Commission. This evidence consisted of medical reports from Kelly's doctors and a report by Dr. Matz, who was hired by the County to conduct an examination of Kelly.

At the hearing on the motion, the County argued that Dr. Matz's report constituted undisputed expert evidence that established that Kelly's surgery was not causally connected to the October 2002 incident. The County further argued that Kelly failed to produce any medical testimony affirmatively establishing causation, which the County asserted was required of Kelly. To the extent that the circuit court granted the County's motion based on either or both of these arguments, the court erred.

### Dr. Matz's Report

■ The County relied on Dr. Matz's report as evidence of non-causation at the Commission and motion hearings. However, Dr. Matz did not testify at the Commission hearing and did not provide an affidavit or deposition testimony. Because of the report's inherent hearsay nature, opinions in the report would not have been admitted into evidence over objection at the circuit court trial.

■ Proceedings before the Commission are relatively informal to allow the parties to present their positions without undue expense and delay, and exceptions to the rules of evidence are made in order to promote speed and economy. R.P. Gilbert and R.L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 2.2–1 (2d ed.1993). For example, instead of producing live medical testimony at Commission hearings, "medical reports are accepted into evidence as a matter of course despite their inherent hearsay nature." *Id.* at § 2.2–1. These reports, however, may not be admissible at a *de novo* proceeding conducted at the circuit court level, where the rules of evidence apply, including Rule 5–802 ("Except as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible."). *See Candella v. Subsequent Injury Fund,* 277 Md. 120,

124, 353 A.2d 263 (1976) ("While ... the commission is not to be bound by the usual common law or statutory rules of evidence, such evidence may be subject to rejection in the circuit court on a review *de novo*.").

This Court discussed, in *Chadderton v. M.A. Bongivonni, Inc.*, 101 Md.App. 472, 647 A.2d 137 (1994), the admissibility of hearsay medical evaluations. Applying the rationale used in *Yates v. Bair Transport, Inc.*, 249 F.Supp. 681 (S.D.N.Y.1965), we held that the circuit court committed reversible error by admitting the reports of two doctors who examined the claimant on behalf of the workers' compensation insurer and the employer, but who did not testify at the trial. We held that self-serving reports, introduced by the party who arranged for the reports, lacked the requisite trustworthiness needed to be admissible into evidence. Accordingly, we concluded: "[A] doctor's report prepared in the regular course of business, is admissible 'when offered by one other than the entrant or one for whom the entrant is then working.'... '[S]elf-serving' reports without any 'counterbalancing force' were not admissible and ... the doctors had to testify in court." *Chadderton*, 101 Md.App. at 483, 647 A.2d 137 (quoting *Yates*, 249 F.Supp. at 690).

In the instant case, Dr. Matz was hired by the County to conduct an examination of Kelly and produce a report in anticipation of this litigation. Additionally, the County was the party who introduced the report at the Commission hearing, and relied upon it as evidence to support its motion for summary judgment. For these reasons, under the rationale of *Chadderton* and *Yates*, Dr. Matz's report is a self-serving report being offered by the party who prepared it, and, therefore, would not be admissible at trial. Consequently, the Matz report was not adequate to establish the lack of causation as a matter of law in any event.

In *Vanhook v. Merchants Mutual Insurance Co.*, 22 Md. App. 22, 321 A.2d 540 (1974), this Court vacated the trial court's grant of summary judgment, holding that there were no facts in the record enabling the court to determine whether

a genuine dispute as to any material fact existed. Concluding that "[t]he record contains no affidavits, no depositions, no admissible documentary evidence, no interrogatories, no request for admission of facts, no stipulations by the parties, and no concessions of fact by the parties," *id.* at 24, 321 A.2d 540, we stated:

> [A] court cannot rule summarily as a matter of law until the parties have supported their respective contentions by placing before the court facts which would be admissible in evidence. *Brown v. Suburban Cadillac, Inc.,* [260 Md. 251, 272 A.2d 42 (1971) ]. Each opposing party is given ample opportunity to place before the court facts which, on the one hand, show that he is entitled as a matter of law to the ruling he seeks, or, on the other hand, show that a fact, material to the opponent's position, is disputed.

*Id.* at 26, 321 A.2d 540. The *Vanhook* Court then described the ways that Md. Rule 2–501 permits the facts to be placed before the court: by affidavit, deposition, answers to interrogatories, admission of facts, stipulation or concession, or pleadings.[1]  *Id.* at 26–27, 321 A.2d 540.

In the instant case, the County failed to support its motion for summary judgment with any facts that would have been admissible into evidence establishing a lack of causation between Kelly's October 2002 accident and his subsequent surgery. Specifically, there was no admissible medical testimony or sworn affidavit establishing such lack of causation.

Because the County submitted no other testimony or affidavit at the hearing on the motion for summary judgment, it did not present undisputed evidence that permitted the court to rule as a matter of law that the Commission's conclusion was untenable and that Kelly's surgery was not causally connected to his October 2002 accident. The County, as the party attacking the decision, had the burden of supporting the motion with admissible evidence conclusively establishing that

---

1.  *Vanhook* was decided under former Md. Rule 610, which was substantively similar to Rule 2–501.

there was no genuine dispute of a material fact as to causation. *Cf. S.B. Thomas,* 114 Md.App. at 384, 689 A.2d 1301 ("[W]e hold that expert medical testimony was as surely required for the appellants to prove non-causation as it would have been required for the appellee to prove causation, had the decision of the Workers' Compensation Commission gone in the opposite direction.").

Further, the circuit court erred by effectively shifting to Kelly the burden of producing evidence of causation. Because the successful claimant enjoyed the presumption of the correctness of the Commission's finding of causation, it was error for the circuit court to hold that the claimant had to do anything to defeat the employer's motion for summary judgment.

In challenging the presumption of the Commission's decision, the County's burden "was not the lesser task of merely casting doubt on the claimant's proof of causation. . . . Their[ ] [burden] was, rather, the greater task of generating affirmatively a genuine jury issue of non-causation." *Id.* at 367–68, 689 A.2d 1301. The County failed to overcome the presumption that the Commission's decision was correct and failed to meet its burden of demonstrating that it was entitled to judgment in its favor as a matter of law.

### Kelly's Evidence

██ The County also argued that it should be granted judgment as a matter of law because Kelly "failed to present any evidence to [affirmatively] show that his need for back surgery was causally connected" to the October 2002 accident. As stated previously, however, Kelly was not required to produce medical testimony at this stage of the circuit court proceedings. Kelly bore no burden of production, and could simply rely on the presumption of correctness of the Commission's decision. The presumption of correctness of the Commission's decision is a fact that would be submitted into evidence for the jury's consideration, and is enough, by itself, to create a genuine dispute of a factual inference pertaining to causation for summary judgment purposes.

As we have noted above, however, in addition to relying upon the presumption of correctness of the Commission's decision, Kelly did submit medical reports prepared by Dr. Dey, which acknowledged that Kelly was involved in a motor vehicle accident in October 2002 and corroborated Kelly's testimony that he had been pain free before the accident but experienced an immediate resurgence of pain because of the accident.

Moreover, Kelly is not prohibited from presenting additional medical evidence at trial to bolster the Commission's decision. It is well settled that at an essential trial *de novo* review of a decision of the Commission, the "testimony is not confined to that taken before the Commission, but each side has the right to call witnesses to support its case." *Miller v. James McGraw Co.*, 184 Md. 529, 542–43, 42 A.2d 237 (1945). Accordingly, a medical expert would be permitted to testify as to the results of an additional examination made by the expert between the date of the Commission's award and the *de novo* trial of the case in the circuit court. *Id.* at 543, 42 A.2d 237.

We conclude, therefore, that, because the County bore the burden of establishing a prima facie case of non-causation, and because Kelly enjoyed the presumption of correctness of the Commission's decision, there was legally sufficient evidence in this case to generate a genuine dispute as to a material fact.

In the instant case, as in *Fenwick, supra,* 258 Md. at 140, 265 A.2d 256 and *Eqypt Farms, supra,* 49 Md.App. at 182, 430 A.2d 122, the circuit court's error was in resolving the disparate inferences as a matter of law on summary judgment. "In doing so, it acted as a trier of fact, which was not its function at that point." *Id.* Accordingly, summary judgment should not have been granted in the County's favor.

It is as important "to note what we are not holding as to note what we are holding." *American Airlines,* 120 Md.App. at 359, 707 A.2d 412. We do not hold that summary judgment can never be granted in an appeal from a decision of the Commission. We have previously stated: "If the require-

ments of Md. Rule 2–501 are met, summary judgment may be invoked to prevent an unnecessary trial in a worker's compensation appeal, just as in any other action." *Dawson's Charter Service v. Chin,* 68 Md.App. 433, 440, 511 A.2d 1138 (1986). *See also Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 577–78, 51 A.2d 288 (1947) (Court of Appeals affirmed a directed verdict entered against a claimant who prevailed before the Commission, because the undisputed facts established that the claim was barred by the statute of limitations); and *Albright v. Pennsylvania R. Co.,* 183 Md. 421, 435, 37 A.2d 870 (1944) (Court of Appeals affirmed trial court's grant of a J.N.O.V. against a claimant who prevailed before the Commission, because the uncontradicted evidence established that the Commission was without jurisdiction in the matter). Our holding in *S.B. Thomas* makes clear, however, that if the claimant was the prevailing party before the Commission, and the employer has requested a jury trial *de novo,* the presumption of correctness of the Commission's ruling precludes the circuit court from ruling as a matter of law, upon a motion for summary judgment, that the claimant's evidence of a *prima facie* case will be insufficient. Accordingly, we reverse the judgment of the circuit court.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**