891 A.2d 1103

**BALTIMORE COUNTY, Maryland**

v.

**William A. KELLY, III.**

**No. 17, Sept. Term, 2005.**

Court of Appeals of Maryland.

Feb. 7, 2006.

William J. Bower, III, Assistant County Attorney (Jay L. Liner, County Attorney, on brief), Towson, for petitioner.

Victor D. Sobotka (Schlachman, Belsky & Weiner, P.A., on brief), Towson, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

Workers' compensation cases, in some regards, occupy a special niche in Maryland civil law. One of those is the polyglot legal processes available to obtain judicial scrutiny of the decision of the administrative body, the Workers' Compensation Commission (the Commission), which considers such claims in the first instance. A party dissatisfied by the action of the Commission may seek review in a circuit court by either proceeding on the record made before the Commission (much like judicial review of the final action of most state administrative agencies) or receive a new evidentiary hearing and deci-

sion before a jury (much like an original civil complaint brought in a circuit court). Under either process elected in a circuit court by the party seeking to reverse or modify the Commission's decision in whole or in part, the agency's decision is entitled to a presumption of correctness that must be overcome. In the present case, we shall consider whether an essentially *de novo* jury process before the Circuit Court for Baltimore County was amenable to disposition on a motion for summary judgment filed by the petitioning party.

## I.

William A. Kelly, III (Kelly), a Baltimore County police officer, while operating his police cruiser, was involved in a motor vehicle accident with a drunk driver. Kelly filed a claim with the Commission asserting that a required surgery to his lower back was linked directly to the motor vehicle accident. Because Kelly acknowledged that the accident aggravated a prior back injury, his employer, Baltimore County (County), argued that the surgery was a consequence exclusively of the pre-existing back injury, not the employment-related motor vehicle accident. The Commission determined that "the accidental injury sustained ... exacerbated [Kelly's] pre-existing condition requiring the need for back surgery," and thus ordered benefits be paid to Kelly.

The County "appealed" the Commission's decision to the Circuit Court for Baltimore County, filing a Petition for Judicial Review and requesting a jury trial. The County followed with a Motion for Summary Judgment claiming that there was "no medical evidence to support [Kelly's] claim that his back surgery ... and subsequent treatment [was] in any way related to the ... motor vehicle accident." It argued that Kelly, under *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 689 A.2d 1301 (1997), was required to prove causation because his claim involved a complex medical question. Asserting that Kelly failed before the Commission to meet that burden by competent medical evidence, the County claimed entitlement to judgment as a matter of law. The trial court

granted the County's Motion for Summary Judgment, thus reversing the Commission's decision in favor of Kelly.

On Kelly's direct appeal, the Court of Special Appeals, in a reported opinion, *Kelly v. Baltimore County*, 161 Md.App. 128, 867 A.2d 355 (2005), reversed the judgment of the Circuit Court and remanded the case for further proceedings. We granted the County's Petition for Writ of Certiorari to determine whether summary judgment was granted properly by the Circuit Court. *Baltimore County v. Kelly*, 387 Md. 462, 875 A.2d 767 (2005).[1]

## II.

Writing for the Court of Special Appeals in this matter, Judge Meredith detailed well the following factual and procedural background of this case:

On October 24, 2002, Kelly was on routine patrol, driving a marked police car, when he was struck by an oncoming vehicle. The driver of the other vehicle, who was impaired by alcohol, turned the wrong way down a one-way street and crashed into the driver's side of Kelly's car. According to Kelly, as a result of the accident, Kelly re-injured his back, which had been problematic for some time. He obtained medical care on October 25, 2002, at which time he was diagnosed with a lumbar sprain and placed on modified activity with some restrictions.

On October 28, 2002, the County filed a first report of injury, informing the Commission that Kelly's accident caused him to suffer an injury to his lower back (lumbar and sacral). Subsequently, on January 20, 2003, Kelly filed his own employee's claim with the Commission, and he also

---

1. The County submitted the following questions for our review:
 (1) Whether summary judgment is appropriate as a matter of law for an appeal from the Maryland Workers' Compensation Commission.
 (2) Whether there exists a dispute as to a material fact that prevents a summary judgment ruling in this matter.
 (3) Whether medical reports were improperly considered by the Circuit Court for Baltimore County.

claimed his lower back was injured when his vehicle was struck. On January 27, 2003, prior to the Commission awarding Kelly any compensation for the October 2002 employment-related injury, Kelly underwent surgery for the decompression of a disc in his back.

The Commission issued Kelly an award on February 25, 2003, finding that he had sustained an accidental injury arising out of the course of his employment, and that he was temporarily totally disabled as a result of his injuries. The County was ordered to provide Kelly with weekly compensation dating back to November 3, 2002, and to pay for his medical treatment and other necessary medical services as provided by Md.Code (1957, 2002 Repl.Vol.), Labor and Employment Article ("L.E."), § 9–660 through § 9–664, and § 9–689.

On April 14, 2003, the County filed issues to be heard by the Commission, questioning whether Kelly's surgery was causally related to his accident of October 24, 2002. A hearing was held by the Commission on July 31, 2003.

At the Commission hearing, the County argued that the back injury that led to Kelly's surgery was actually a non-work-related injury suffered in December 2001 while playing basketball. Evidence was presented in the form of medical reports, which indicated Kelly had been receiving treatment since the December 2001 incident for a disc herniation in the same area of his lower back where his 2003 surgery had been performed.

The County submitted a letter report from Dr. Stephen R. Matz, a physician hired by the County to conduct an "independent medical evaluation" of Kelly. The County argued that it was Dr. Matz's opinion that Kelly's back surgery was not causally connected to the employment-related motor vehicle accident, but instead resulted from his 2001 basketball injury. Additionally, the County submitted two letters concerning the surgery from Kelly's treating physician, Dr. Ira Fedder, which the County argued did not expressly connect the surgery with the injury Kelly suffered from the motor vehicle accident. The County argued that

Dr. Fedder's omission of an opinion as to causation was significant.

The documentary evidence presented by the County reflected that Dr. Fedder had discussed back surgery with Kelly in September 2002 during the course of treatment for the December 2001 basketball injury. The documents further reflected that Dr. Fedder suggested that, before resorting to surgery, Kelly should first undergo a series of injections, known as selective nerve root block, to see if that procedure would eliminate his back pain.

Dr. Fedder referred Kelly to Dr. P. Bobbie Dey, who gave Kelly nerve root block injections on the following four dates: October 10, 2002, October 17, 2002, October 31, 2002, and November 7, 2002. Kelly testified at the Commission hearing that after the October 17, 2002 injection, he was doing well and was not going to receive the third injection. However, after the motor vehicle accident on October 24, 2002, Kelly's pain returned, and he decided to receive the third and fourth injections.

Dr. Dey's patient reports regarding Kelly were submitted at the Commission hearing. They corroborated that Kelly was experiencing pain when he visited her on October 31, 2002, one week after his involvement in the motor vehicle accident. Her report from that visit stated: "[T]he patient was 100 percent improved. Recently, the patient had a side impact, work-related motor vehicle accident since which time the pain in his legs have returned. I recommend no [street] duties as a police officer for the [next] 6 to 8 months."

Kelly submitted additional medical records at the Commission hearing regarding the 2001 back injury. He admitted that Dr. Fedder had discussed the possibility of surgery with him prior to the motor vehicle accident that occurred on October 24, 2002, but he asserted that his condition had improved substantially in response to the nerve root injections he received, and that he had ruled out surgery until the accident caused the pain to return. Kelly argued that, while the motor vehicle accident was not the original cause

of his back pain, the accident aggravated the old injury and caused him to need surgery.

Kelly also testified that he did not miss any time from work as a result of the December 2001 basketball injury, except for two to three days right after the injury occurred. He testified that he had been in incidents involving fights with suspects since he suffered the original injury, but he had never reinjured his back until the motor vehicle accident on October 24, 2002.

The Commission issued a decision in Kelly's favor, finding: "[T]he accidental injury sustained on October 24, 2002 exacerbated [Kelly's] pre-existing condition requiring the need for surgery...." The County was ordered to pay for all of Kelly's medical bills that were related to the January 27, 2003 surgery, and to provide Kelly with compensation for his recovery period following the surgery.

The County sought judicial review of the Commission's decision in the Circuit Court for Baltimore County pursuant to Md. Rule 7–201, and requested a jury trial. The County then filed a motion for summary judgment, requesting that the court summarily reverse the decision of the Commission and enter judgment in its favor. Relying on the record from the proceedings before the Commission, and without any supplemental evidence offered by way of affidavit or deposition testimony, the County argued that the case involves a complex medical question, which requires the claimant to produce medical testimony to connect the need for surgery and treatment to the employment-related accident.

Kelly opposed the County's motion, arguing that there was sufficient medical evidence in the record before the Commission to support his claim and the Commission's finding that the surgery was related to the accident. Kelly further asserted that there was a genuine dispute concerning the material fact of whether the aggravation of his back injury and the surgery were causally connected to the motor vehicle accident. In response to the motion, Kelly offered no supplemental evidence, but instead relied on the evidence in the record from the Commission. Kelly also argued that

the Commission's finding of causation was entitled to a presumption that it was correct.

After a hearing, the circuit court, without opinion, granted the County's motion for summary judgment and entered judgment in the County's favor. Kelly noted a timely appeal.

*Kelly,* 161 Md.App. at 132–35, 867 A.2d at 357–59.

### III.

The general standards for determining whether summary judgment is appropriate are well established. Under Maryland Rule 2–501(a),[2] "[a]ny party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." While summary judgment motions exist to facilitate the efficient disposition of litigation, where appropriate, we have recognized that "the function of a summary judgment proceeding is not to try the case or to attempt to resolve factual issues, but to ascertain whether there is a dispute as to a material fact sufficient to provide an issue to be tried." *Peck v. Baltimore County,* 286 Md. 368, 381, 410 A.2d 7, 13 (1979) (citing *Honaker v. W.C. & A.N. Miller Development Company,* 285 Md. 216, 231, 401 A.2d 1013, 1020 (1979)). Thus, "[i]n a summary judgment proceeding even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact." *Fenwick Motor Company, Inc. v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256, 258 (1970) (Citations omitted). When assessing the grant of summary judgment, appellate courts review those decisions *de novo. Walk v. Hartford Casualty Insurance Company,* 382 Md. 1, 14, 852 A.2d 98, 105 (2004) (Citation omitted).

---

**2.** We apply the Rule in effect when the summary judgment motion in the present case was filed on 7 October 2003, rather than the current version which became effective 1 July 2004.

Before determining whether the Circuit Court properly granted summary judgment here, we necessarily consider the complication of § 9–745 of the Labor and Employment Article of the Maryland Code (1991, 1999 Repl.Vol.),[3] which provides the procedure for the conduct of proceedings in a circuit court for "appeals" from decisions from the Workers' Compensation Commission. Specifically, § 9–745(c) states that "[t]he court shall determine whether the Commission: (1) justly considered all of the facts . . . ; (2) exceeded the powers granted to it under this title; or (3) misconstrued the law and facts applicable in the case decided." Section 9–745(e) provides that, upon its review of the Commission's decision, the Circuit Court may either confirm, reverse, or modify the decision, or remand the case to the Commission for further proceedings. § 9–745(e)(1) ("If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission."); § 9–745(e)(2) ("If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings."). This first method of appealing decisions from the Commission has been labeled the "routine appeal process." *S.B. Thomas, Inc.,* 114 Md.App. at 364, 689 A.2d at 1304.

■ Alternatively, § 9–745(d) allows any party to "submit to a jury any question of fact involved in the case." Section 9–745(b) additionally provides that "[i]n each court proceeding under this title: (1) the decision of the Commission is presumed to be prima facie correct; and (2) the party challenging the decision has the burden of proof." This second and "more unusual modality" of appeal, *S.B. Thomas, Inc.,* 114 Md.App. at 364, 689 A.2d at 1304, provides for, as we have recognized previously, an "essentially" *de novo* trial. *Richardson v. Home Mutual Life Insurance Company,* 235 Md. 252, 255, 201 A.2d 340, 342 (1964) ("Although the statute does not use

---

3. Unless otherwise provided, all statutory references are to the Labor and Employment Article of the Maryland Code (1991, 1999 Repl.Vol.).

the term, its directions would seem to contemplate a trial which essentially is de novo . . . ."); *see also Holman v. Kelly Catering, Inc.,* 334 Md. 480, 484, 639 A.2d 701, 703 (1994); *Smith v. State Roads Commission,* 240 Md. 525, 533, 214 A.2d 792, 796 (1965).[4]

 Where the employer prevails before the Commission and the claimant elects to appeal employing an essentially *de novo* trial method, "the provision, as a practical matter, is largely meaningless" because the parties retain their initial burdens of proof and persuasion. *S.B. Thomas, Inc.,* 114 Md.App. at 366, 689 A.2d at 1305 (quoting *Bark,* 79 Md.App. at 79, 555 A.2d at 547). Yet, as in the present case, where the employer chooses to appeal the Commission's decision in favor of the claimant through an essentially *de novo* trial, a different calculus emerges. We have explained that § 9–745(b)(1) and (2) "are two distinct yet connected requirements." *Holman,* 334 Md. at 485, 639 A.2d at 704 (Citations omitted). Section 9–745(b)(2) expressly assigns the burden of proof; yet, as we noted, in *Holman,* "the legislature intended that the Commission's decision have a greater effect than merely placing the burden of proof on the party who challenges that decision." *Holman,* 334 Md. at 486, 639 A.2d at 704. Upon an award to the claimant by the Commission, the burden of proof, which was borne by the claimant before the Commission, switches to

---

**4.** In its decision in the present case, the Court of Special Appeals aptly outlined the distinction between a true *de novo* trial and an essentially *de novo* trial:

A true trial *de novo* was described as one in which all of the parties were put back at square one to begin again just as if the adjudication being challenged had never occurred. Accordingly, "[w]hichever party . . . had the burden of production and the burden of persuasion before the Commission would again have those same burdens before the circuit court." *General Motors Corp[oration v. Bark,* 79 Md.App. 68, 79, 555 A.2d 542, 547 (1989)]. An "essential trial *de novo*" differs, however, due to the conditions required by L.E. § 9–745(b)— that the decision of the Commission be presumed as *prima facie* correct, and that the burden of proof be placed on the party attacking the decision.

*Kelly,* 161 Md.App. at 137, 867 A.2d at 360 (Some alterations in original).

the employer before the circuit court. "In such a case, the decision of the Commission is, *ipso facto,* the claimant's *prima facie* case. . . . Indeed, the successful claimant, as the non-moving party on appeal, has no burden of production." *Bark,* 79 Md.App. at 80, 555 A.2d at 548.

Section 9–745(b)(1), on the other hand, addresses the burden of persuasion. "The burden is upon the appellant to overcome the presumption that the decision of the Commission is prima facie correct, and he must do this to the satisfaction of the trier of the facts." *Abell v. Albert F. Goetze, Inc.,* 245 Md. 433, 437, 226 A.2d 253, 256 (1967) (citing *Williams Construction Company v. Bohlen,* 189 Md. 576, 580, 56 A.2d 694, 696 (1948)). As such, "if the mind of the trier of facts is in equal balance on the evidence in the record, the finding of the Commission should be affirmed." *Ackerhalt v. Hanline Brothers, Inc.,* 253 Md. 13, 21, 252 A.2d 1, 5 (1969) (quoting *Blake Construction Company v. Wells,* 245 Md. 282, 286, 225 A.2d 857, 860 (1967), which, in turn, cites *Greenwalt v. Brauns Building Specialties Corporation,* 203 Md. 313, 318, 100 A.2d 804, 807 (1953)). Yet, as we noted in *Holman v. Kelly Catering, Inc., supra,* "[t]he Commission's decision is merely *evidence* of a particular fact (or facts) which, as with all evidence, the jury is free to disregard if it finds it to be incredible." *Holman,* 334 Md. at 494, 639 A.2d at 708 (quoting *Kelly Catering, Inc. v. Holman,* 96 Md.App. 256, 275, 624 A.2d 1300, 1309 (1993) (Emphasis in original)). In *Moore v. Clarke,* 171 Md. 39, 45, 187 A. 887, 890 (1936), we recognized the challenge to a circuit court in providing deference to the Commission's decision, yet undertaking its own critical review:

> The provision that the decision of the Commission shall be "*prima facie* correct" and that the burden of proof is upon the party attacking the same does not mean, therefore, that if no facts are established before the Commission sufficient to support its decision, that there is any burden of factual proof on the person attacking it, for the decision of the Commission cannot itself be accepted as the equivalent of facts which do not exist. . . . On the other hand, where the decision of the Commission involves the consideration of

conflicting evidence as to essential facts, or the deduction of permissible but diverse inferences therefrom, its solution of such conflict is presumed to be correct, and the burden of proof is upon the party attacking it to show that it was erroneous.

This is the analytical framework for our consideration of the present case.

## IV.

The County (the employer and party appealing the Commission's decision) filed a Motion for Summary Judgment in the Circuit Court. Relying exclusively on the record from the proceedings before the Commission, the County asserted that Kelly's claim presented a complicated medical question with regard to the cause for Kelly's need for back surgery which required affirmative proof through expert medical testimony. Assuming, *arguendo*, that the issue of causation in the present case involved a complex medical question,[5] summary judgment still was not appropriate at the point in the proceedings in the Circuit Court at which it was granted. Given the Commission's decision in favor of Kelly, the burden of proof rested with the County in the Circuit Court. *See* § 9–745(b)(2). This burden on the County obliged it to produce evidence regarding the lack of causation between the motor vehicle accident and Kelly's back surgery. Kelly, therefore, was not required, at that stage of the Circuit Court proceedings, to adduce his medical evidence, if any, affirmatively establishing causation. *But see Board of Education for Montgomery County v. Spradlin*, 161 Md.App. 155, 198, 867 A.2d

---

**5.** Whether the current issue of causation involved a complex medical question is an issue we need not address presently; however, we note that the Court of Special Appeals stated, in *S.B. Thomas, Inc.*, 114 Md.App. at 382–83, 689 A.2d at 1313:

There can be no hard and fast rule controlling all cases. It does appear clear, however, that when there is a genuine issue as to whether there is a causal connection between an earlier injury and a subsequent disability, in the majority of cases it will be a complicated medical question requiring, as a matter of law, expert medical testimony.

370, 396 (2005) ("This does not mean, of course, that either party at the *de novo* trial would not be vulnerable to summary judgment on various legal grounds or that the party with the burden of production would not be vulnerable for failing to satisfy that burden."). A pair of opinions authored by Judge Moylan for the Court of Special Appeals assist greatly in illustrating the propriety of this conclusion in workers' compensation law under these circumstances.

In *S.B. Thomas, Inc. v. Thompson, supra,* the claimant prevailed before the Workers' Compensation Commission. *S.B. Thomas, Inc.,* 114 Md.App. at 363, 689 A.2d at 1304. Finding that Thompson carried both his burden of production and that of persuasion, the Commission determined that the claimant successful demonstrated a "legally established linkage" between a work-related injury in October 1992 and the resultant disability which re-emerged in June 1993.[6] *S.B. Thomas, Inc.,* 114 Md.App. at 363–64, 689 A.2d at 1304. On appeal to the Circuit Court, sitting with a jury, the prevailing claimant made a motion for judgment following the conclusion of the presentation of the appealing employer's case-in-chief.[7] *S.B. Thomas, Inc.,* 114 Md.App. at 361, 689 A.2d at 1303. The claimant argued that the employer was "required to present expert testimony on the causation issue because the issue involved was a 'complicated medical question' and that [the employer] had failed to do so." *Id.* The Circuit Court granted judgment for the claimant and affirmed the Commission's decision. *Id.*

The Court of Special Appeals subsequently affirmed the Circuit Court's judgment, holding that, "in the absence of expert medical testimony, the [employer] failed to meet [its]

---

6. The claimant was discharged from initial medical treatment for his injury in November 1992. *S.B. Thomas, Inc.,* 114 Md.App. at 362, 689 A.2d at 1303.

7. The employer, S.B. Thomas, Inc., and its insurer, Travelers Indemnity Company, appealed the Commission's decision to the Circuit Court. *S.B. Thomas, Inc.,* 114 Md.App. at 361, 689 A.2d at 1303. For our purposes here, we refer only to the employer as the appealing party.

burden of production." *S.B. Thomas, Inc.,* 114 Md.App. at 385, 689 A.2d at 1315. As the challenging party, it was the employer's "newly assumed narrative burden before the circuit court ... to show that the [claimant's] current disability was not causally related to the accidental injury suffered by him...." *S.B. Thomas, Inc.,* 114 Md.App. at 370, 689 A.2d at 1307. The Court of Special Appeals explained:

> The [claimant] was not required to prove anything. He had no burden of production. Even on the question of ultimate persuasion, had the case gone that far, he could have offered nothing and simply relied on the failure of the [employer] to rebut the presumption of correctness of the Commission's earlier ruling.

*S.B. Thomas, Inc.,* 114 Md.App. at 369, 689 A.2d at 1306.

In *American Airlines Corporation v. Stokes,* 120 Md.App. 350, 352, 707 A.2d 412, 413 (1998), the claimant lost before the Commission and appealed to the Circuit Court requesting a jury trial. The jury decided in favor of the appealing claimant. *Id.* On appeal to the Court of Special Appeals, the employer argued that the Circuit Court erroneously denied its Motion for Judgment *Non Obstante Veredicto* (J.N.O.V.). *Id.* The intermediate appellate court reversed. *Stokes,* 120 Md.App. at 369, 707 A.2d at 422. While the court recognized that "the claimant, obviously carried his burden of persuasion at the circuit court level, for the jury rendered a verdict in his favor," *Stokes,* 120 Md.App. at 353, 707 A.2d at 414, it determined ultimately that the Circuit Court erred in denying the employer's J.N.O.V. motion. *Stokes,* 120 Md.App. at 365, 707 A.2d at 419. The Court of Special Appeals held that *"under the circumstances present in this case* the cause-and-effect relationship between the [initial] incident ... and the subsequent back condition was a complicated medical question requiring, as a matter of law, expert medical evidence." *Stokes,* 120 Md.App. at 359, 707 A.2d at 417 (Emphasis in original). Because the appealing claimant did not produce the expert medical evidence, he had not carried his burden of initial production. *See Stokes,* 120 Md.App. at 353, 707 A.2d at 414. The court cautioned, however: "[w]e are not necessarily hold-

ing ... that every cause-and-effect relationship between a back strain on one date and the condition of an injured back some four or five months later would always present a complicated medical question calling for expert medical evidence." *Stokes,* 120 Md.App. at 359, 707 A.2d at 417; *see also Jewel Tea Company, Inc. v. Blamble,* 227 Md. 1, 7, 174 A.2d 764, 767 (1961) ("What we have said should not be taken as indicating that we conclude that all awards in cases of injuries of a subjective nature can stand only if accompanied by definitive medical testimony....") (Citations omitted); *S.B. Thomas, Inc.,* 114 Md.App. at 382, 689 A.2d at 1313 ("the stronger the case for the causal connection even absent expert medical testimony, the lesser the need for such testimony; the weaker the non-medical case for the causal connection, the greater the need for such testimony").

 Here, Kelly, the prevailing party before the Commission, was not obliged to adduce medical testimony affirmatively establishing the issue of causation at the stage in the Circuit Court proceedings when summary judgment was sought by the County and granted by the court. *See* § 9–745(b)(2). The Commission reviewed the competing evidence before it and determined that "the accidental injury sustained on October 24, 2002 exacerbated [Kelly's] pre-existing condition requiring the need for back surgery." Thus, like the Court of Special Appeals, we conclude that the "evidence gave rise to permissible inferences from which the Commission could have rationally [reached its conclusion]." *Kelly,* 161 Md.App. at 143, 867 A.2d at 364. We have stated that "[t]he general rule in Workmen's Compensation cases is that where there is *any* evidence from which a rational conclusion may be drawn, as opposed to the theory of prayer for a directed verdict, the trial court must leave to the jury all considerations as to the weight and value of such evidence." *Jewel Tea Company, Inc.,* 227 Md. at 4, 174 A.2d at 765 (Emphasis in original) (Citations omitted). As we discussed, *supra,* the purpose of summary judgment is not to try the case or to attempt to resolve factual disputes. Accordingly, summary judgment was granted inappropriately by the Circuit Court.

JUDGMENT OF THE COURT OF SPECIAL APPEALS
AFFIRMED; COSTS TO BE PAID BY PETITIONER.