BETHLEHEM STEEL CORPORATION *v.* SUPERVISOR OF ASSESSMENTS OF BALTIMORE COUNTY

[No. 436, September Term, 1977.]

*Decided January 13, 1978.*

The cause was argued before MORTON, MOYLAN and WILNER, JJ.

*R. Taylor McLean,* with whom were *Royston, Mueller & McLean* on the brief, for appellant.

*Peter Max Zimmerman, Assistant County Solicitor,* with whom were *J. Carroll Holzer, County Solicitor,* and *Harry S. Shapiro, Chief Assistant County Solicitor,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

Imagine the consternation of Baltimore County when it discovered that nearly $150 million of its property tax base was up for grabs in the Maryland Tax Court and it was not a party to the proceeding. Imagine then the grief of Bethlehem Steel Corporation, the owner of that tax base, when, five months after trial of the matter had been concluded, Baltimore County expressed a desire to intervene in the case "in order to present evidence and file briefs."

That's what this case is about. On October 29, 1976, the Tax Court said that the county could not intervene; and to make matters worse, in the county's eyes, on the same day, the Tax Court affirmed a $25.6 million reduction in Bethlehem's assessment.[1] Aggrieved in the truest sense (i.e., in the purse), the county appealed to the Circuit Court for Baltimore County

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, March 8, 1978.

1. At issue in the Tax Court was the assessment for the 1973-74 tax year. The most immediate effect of the decision, therefore, was to require the county to refund to Bethlehem the taxes it had paid on the $25.6 million, together with interest.

with an allegation that the Tax Court's action in denying the county's petition to intervene was arbitrary, capricious and illegal. It asked that both orders of the Tax Court be reversed, and that the case be remanded to the Tax Court "for further proceedings consistent with the right of Baltimore County to intervene, present evidents [sic] and make argument." [2]

The Circuit Court correctly framed the question before it: did the Tax Court, by failing to allow Baltimore County to intervene, abuse its discretion? [3] After summarizing the arguments on both sides of the issue, the court found that "in the interest of justice" it must grant the relief requested by the county. The "most compelling reason" for this, it said, was that the Tax Court failed to state any reasons for its decision on the petition to intervene, which rendered it impossible to determine whether or not it abused its discretion. From this action of the circuit court, Bethlehem has appealed.

We reverse the order of the Circuit Court, as we do not believe the Tax Court abused its discretion.

We begin, as the Court of Appeals began in *Comptroller v. Diebold, Inc.,* 279 Md. 401 (1977), "by noting that judicial review of decisions of the Maryland Tax Court is severely limited." Md. Annot. Code, art. 81, § 229 (o) provides that, on appeal, the circuit court "shall determine the matter upon the record made in the Maryland Tax Court [and] shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record."

Thus, the Court in *Diebold* stated at 407:

"We have held that the standard by which a result reached by the Tax Court is reviewed is whether a reasoning mind reasonably could have reached the factual conclusion which that agency reached,

---

2. The Supervisor of Assessments for Baltimore County, who was a party in the Tax Court, did not appeal the Tax Court's order and did not join in the county's appeal.

3. *See* Montgomery Co. v. Supervisor, 275 Md. 58 (1975): "And as we have indicated, issuance of an order permitting intervention is within the Tax Court's sound discretion."

*Fairchild Hiller Corp. v. Supervisor of Assessments,*
267 Md. 519, 521, 298 A. 2d 148, 149 (1973). The
application of this test need not and must not be
either judicial fact finding or a substitution of
judicial judgment for agency judgment." [4]

It was incumbent upon the circuit court, therefore, to look
to the record in the Tax Court. The mere failure of the Tax
Court to state the reasons for its decision as to intervention
does not, of itself, require reversal if the record discloses
substantial evidence supporting the decision; and thus, what
the circuit court considered the "most compelling reason" for
its action would not, of itself, justify that action.

The record shows that the cases reached the Tax Court on
November 7, 1975, on an appeal by the Supervisor of
Assessments for Baltimore County from the action of the
Baltimore County Property Tax Assessment Appeal Board.[5]
The issues centered around the questions of (1) whether, and
to what extent, the property assessed was personal rather
than real, and (2) whether fair and adequate depreciation had
been allowed.

Trial was held on March 31, 1976, at which four witnesses
testified and seventeen exhibits were admitted. The principal
evidence of valuation came from the testimony and appraisal
report of Sherwood S. Vermilia. Mr. Vermilia had made a
complete appraisal of the Bethelehem property for Baltimore
County in 1953, updated it in 1960 and 1973, and was under
contract with the county to make semi-annual appraisals of
all additions to and changes in the Bethlehem plant. The

---

4. The relevant statutory provision considered in *Diebold* was the
predecessor of § 229 (o); but the Court mentioned the current statute and
noted that it is "substantially similiar" to the one then before it. The
differences are essentially stylistic, and not sufficient to create a different
standard of judicial review than that stated in *Diebold.*

5. There were two parcels involved. Case No. 1063-A concerned 2160 acres,
identified as Sparrows Point Plant and Land; No. 1063-B concerned 212 acres
identified as Sparrows Point Yard Land and Improvements. The Supervisor
had assessed the two parcels, together, at $174,686,360. The appeal board
reduced the combined assessment to $149,647,850 — a reduction of
$25,038,510. On November 20, 1975, Bethlehem also appealed to the Tax
Court with respect to the assessment on the Sparrows Point Plant and Land,
requesting an additional reduction of $8.9 million. As to that property,
therefore, there were cross-appeals. The Bethlehem appeal was noted as
Case No. 1072.

appraisal report — twelve volumes covering over 1,000 buildings and more than 100 miles of rail — was introduced into evidence.

The court stated at the conclusion of the hearing that "it was an excellently presented case." At the request of counsel, the Supervisor was permitted two weeks to file a post-trial memorandum, and Bethlehem was allowed to file a reply memorandum within a week thereafter. The record shows that such memoranda were filed on April 19, and April 28, 1976, respectively. Nothing further transpired, except for court consideration of the mass of evidence before it, until September 8, 1976, when the county filed its petition to intervene.

The county alleged that it had not received notice of the proceedings and did not learn of them until it received an application for a refund of 1973-74 taxes from Bethlehem in "July, 1976." [6] The full story, it said, was not revealed until the county's inquiry, prompted by this application, was answered by the Attorney General's Office on August 12, 1976. The delay between August 12 and September 8, was not explained in the petition. Bethlehem objected to the petition, and asserted that the county had "actual notice" of the proceedings by virtue of the facts that its checks for taxes from 1973-1976 were marked "PAID UNDER PROTEST," a letter from the County Office of Finance acknowledged such taxes to be paid under protest, and the principal witness in the case — Mr. Vermilia — was under contract with the county.

The Tax Court held a hearing on the county's petition on September 29, 1976. The proceedings were not transcribed, but the record shows that the court had before it the county's petition, Bethlehem's answer, the county's reply to Bethlehem's answer, accompanied by a memorandum of law,

---

6. The record shows that the application was dated June 29, 1976, and states that it "is based on those matters currently being litigated in the Maryland Tax Court in the cases of *James M. Barry, Supervisor of Assessment of Baltimore County v. Bethlehem Steel Corporation,* Case No. 1063A, and *Bethlehem Steel Corporation v. James M. Barry, Supervisor of Assessments of Baltimore County,* Case No. 1072." This application concerned the Sparrows Point Plant and Land property. A similar application, also dated June 29, 1976, was filed with respect to the other parcel.

and various affidavits, letters, checks, and other documents relating to when the county knew or should have known about the proceedings. Its written order, dated October 29, 1976, recites these pleadings and states that, "the Hearing having been held and the matter considered . . . Baltimore County's Petition to Intervene be and the same is hereby DENIED."

The issues before the Tax Court in terms of the county's intervention were clearly presented by the pleadings and undoubtedly amplified at the hearing. There is nothing hidden or mysterious about them. The Court had to balance the county's undisputed interest in the outcome of the case against the inconvenience of reopening it five months after the evidentiary hearing had been concluded, four months after final memoranda had been filed, and two months after the county admittedly had notice of the proceeding. This is clearly a matter that involves the exercise of discretion; intervention is neither compelled nor forbidden as a matter of law. There was evidence before the tax court from which, if believed, the court could have reasonably concluded that the county was put on notice of the proceedings as early as April, 1976.[7]

Whether, given the same facts or considerations, we, or the circuit court, would have struck the balance in favor of intervention is not relevant. We cannot substitute our judgment for that of the Tax Court, or conclude that its decision was either erroneous as a matter of law or unsupported by substantial evidence in the record.

The county seeks assistance from *Montgomery Co. v. Supervisor, supra,* 275 Md. 58, in which, it says, the Tax Court allowed Montgomery County to intervene in "an equivalent situation." That case is of no help to the county, because the situation there was not "equivalent." The principal difference

7. We refer to a bill for $500 from Mr. Vermilia's company to Baltimore County dated April 6, 1976, showing, as services rendered: "September, 1975 — ½ day preparation of answers to County Appeal Tax Board March, 1976 — 1 day preparation court appearance Bethlehem Steel Co. 1 day court appearance Bethlehem Steel Co." This bill was received by the Supervisor of Assessments and, according to an affidavit from the manager of that office, was sent to the County Office of Central Services on April 22, 1976. The tax court was not obliged to accept the county's explanations for not acting more promptly.

was that the county's petition to intervene in that proceeding was filed *before* the hearing on the merits, and not five months after it. The issue before the Court of Appeals, in any event, was not whether the Tax Court was correct in allowing the county to intervene, but whether, having allowed formal intervention, the county was entitled to participate in the proceeding.

This case would not likely have arisen before 1973. Until then, the county supervisor of assessments was a county employee, paid by the county.[8] His knowledge was the county's knowledge, and his actions were on its behalf. In 1973, the General Assembly, as part of a general revision of the assessment laws, made the supervisor and his assistants State employees.[9] His actions are no longer those of the county. He serves a different master now, and there is no requirement that he keep his former master apprised of appeals taken from his decisions.[10] This case is the unfortunate result of a lack of communication, *both ways,* between officials of different governmental entities whose offices are most likely within walking distance of each other. It is unfortunate, but there is no legal justification to disturb the determination of the Tax Court.

> *Order of the Circuit Court for Baltimore County vacated; case remanded to the circuit court for entry of an order dismissing the appeal of Baltimore County from the orders of the Maryland Tax Court; costs to be paid by Baltimore County.*

---

8. *See* 22 Op. Atty. Gen. 490 (1937).

9. Laws of Md., 1973, ch. 784.

10. We note that four bills (SB 917, SB 1119, HB 1733, and HB 1736) were introduced into the 1977 session of the General Assembly to require the State Department of Assessments and Taxation to notify the county government of property tax assessment appeals, and that none of them passed.