920 A.2d 561

**COMPTROLLER OF THE TREASURY**

v.

**CLISE COAL, INC.**

**No. 654, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

April 5, 2007.

690

John K. Barry (Gerald Langbaum, J. Joseph Curran, Jr., Attorney General, on the brief), Annapolis, MD, for Appellant.

James E. Walsh, Cumberland, MD, for Appellee.

PANEL: DAVIS, EYLER, JAMES R. WOODWARD, JJ.

EYLER, JAMES R., J.

The Comptroller of the Treasury, appellant/cross-appellee ("appellant"), appeals from an order of the Circuit Court for Allegany County, reducing a motor fuel tax assessment against Clise Coal Co., Inc., appellee/cross-appellant ("appellee"), from $9,036.28 to $5,491.90. The circuit court reasoned that a portion of the assessment, affirmed by the Maryland Tax Court, was not supported by substantial evidence.

On appeal, appellant contends that it was not required to introduce affirmative evidence in support of its assessment because it could rely on a presumption of correctness. In response, appellee contends that the circuit court's partial reversal of appellant's assessment was correct.

On cross appeal, appellee contends that appellant was not authorized to base any portion of its assessment upon a methodology that disregarded appellee's records; and the Tax Court abused its discretion by denying appellee's request for a jury trial. We reverse in part and affirm in part the circuit court's order, thereby affirming the Tax Court's decision in its entirety.

## Factual Background

Appellee owns a coal mining and trucking business, which operates in Maryland, West Virginia, and Pennsylvania. Pursuant to Title 9, subtitle 3 of the Maryland Code, Tax General Article, the State imposes a motor fuel tax on motor fuel sold

in the State. Appellee holds a "special fuel user license" that allows it to purchase fuel in bulk without having to pay motor fuel tax to its seller. Each month, appellee must file a return in appellant's office setting forth the amount of taxable fuel used and pay the tax on that fuel. The tax is payable on fuel used in Maryland but not fuel used in other states.

Appellant has a statutory right to audit a license holder's monthly fuel tax returns for accuracy. Appellee has been the subject of such audits.

Appellee's vehicles operate on two different types of diesel fuel, also called "special fuel." On-road vehicles must use low-sulphur "clear fuel," which is subject to the motor fuel tax. High sulphur diesel fuel is permitted only for use in off-road equipment, such as bulldozers and earth movers. This off-road fuel is not subject to the motor fuel tax. High sulphur fuel ("dyed fuel") is injected with dye that changes its color so that an inspection officer can tell whether a vehicle is using dyed fuel simply by performing a visual inspection. Appellee stored both low and high sulphur fuel at its facilities.

In February 2003, two of appellee's vehicles were stopped by an inspection officer who withdrew fuel and found that the vehicles were using dyed fuel in on-road vehicles. The officer issued citations for each truck, and appellee paid two $1,000 fines.

As a result, appellant audited appellee's records. By statute, appellant is authorized to audit appellee for four years from the date of the audit. Accordingly, appellant audited appellee for the period from March 1999 to March 2003. Some of this time period had been the subject of prior audits.

As described by the Tax Court, the audit resulted in the following findings:

1) The fleet miles per gallon reported by [appellee] was higher than that determined by [appellant];

2) [Appellee] reported receipts, inventories and usage from fuel stored in out-of-state tanks on its Maryland return;

3) [Appellee] reported fuel usage by odometer miles rather than the actual fueling amounts;

4) [Appellee] maintained inadequate receipts of fuel purchased;

5) [Appellee] maintained inadequate documentation to back-up [sic] its summary sheet of off-road usage;

6) Additional diesel powered vehicles were fueled from [appellee's] bulk storage tanks, which fuel was not reported on [appellee's] Maryland returns;

7) [Appellee's] inventory records inaccurately calculated inventory levels by erroneously using readings for tanks [sic] sizes which were not the actual tanks maintained by [appellee].

Accordingly, appellant determined that appellee's records were inadequate and computed fuel usage based upon a miles per gallon formula. Appellant determined the mileage that each of appellee's vehicles had been driven during the audit period from odometer readings. Appellant then calculated the average miles per gallon for the fleet. Appellant divided the number of miles driven by the fleet by the estimated miles per gallon to determine the amount of fuel used. Appellant used this calculation to develop the initial assessment.

Appellee pursued the administrative review process within appellant's office. At the hearing, the hearing officer determined, based upon evidence submitted by appellee, that the actual miles per gallon that its vehicles achieved was higher than that originally estimated by appellant, which would result in a lower amount of fuel used.

Appellant reassessed, using a new miles per gallon figure, but it also added additional vehicles to its calculation. The initial assessment had included only appellee's vehicles regulated by the International Fuel Tax Agreement ("IFTA").[1] In

---

1. Under IFTA, certain vehicles defined as "commercial" must pay tax in states where they drive other than the state in which they are based. Taxpayers must file returns with the state in which they are based. The states then exchange the information on the returns with one another

the reassessment, appellant also included non-IFTA vehicles. The addition of these non-IFTA vehicles increased the gallons of fuel used by approximately 14,000 gallons. Appellant then issued a reassessment in the amount of $15,401.90 plus interest and penalty.

Appellee then appealed to the Tax Court. Appellee requested a jury trial, which the Tax Court denied without explanation. The Tax Court conducted a hearing at which both sides presented evidence. The Tax Court issued findings of fact and conclusions of law, thereby affirming the assessment and interest, but waiving the penalty.

Appellee then filed a petition for judicial review in circuit court. In circuit court, appellant acknowledged an error in calculation and agreed to reduce the assessment to $9,036.28. The circuit court reversed the Tax Court's decision with respect to the non-IFTA portion of the assessment on the ground that it was not supported by substantial evidence and affirmed the remainder of the decision. The circuit court's decision resulted in an assessment in the amount of $5,491.90.

This appeal followed.

## Discussion

## Substantial Evidence Requirement

Appellant argues that the "substantial evidence requirement within the standard of review does not require [appellant] to introduce affirmative evidence to support an assessment."

### I. The Motor Fuel Tax

Appellee is permitted to buy diesel fuel tax free as a "special user," pursuant to a license issued by the State. Maryland Code (2004 Repl.Vol.) § 9–318 of the Tax–General Article ("T.G."). Those who obtain such a license are subject to certain obligations, which include keeping records, for four

and collect the taxes due each state based upon the number of miles driven within each state. Non-"commercial" vehicles are not subject to IFTA.

years, of the motor fuel that the licensee buys, receives, sells, delivers, or uses in Maryland, including bills of lading, invoices, and any other pertinent records required to be maintained by the Comptroller. *See* T.G. § 9–309. Further, special users must make such records available for inspection by the Comptroller at any time during business hours. *Id.*

T.G. § 13–406, entitled "Motor fuel tax assessment when records not kept," states that "[i]f a person fails to keep the records required under § 9–309 . . . the Comptroller may: (1) compute the motor fuel tax due by using the best information in the possession of the Comptroller, and (2) assess the tax due." Such an assessment is prima facie correct. T.G. § 13–411.

If the taxpayer wishes to challenge the Comptroller's initial assessment, it can do so through an application to the Comptroller to revise the assessment. T.G. § 13–508(a)(1).

■ If the taxpayer is still dissatisfied with the revised assessment, it can appeal to the Tax Court. T.G. § 13–510. "An appeal before the Tax Court shall be heard de novo and conducted in a manner similar to a proceeding in a court of general jurisdiction sitting without a jury." T.G. § 13–523. The burden is upon the taxpayer to show error in the assessment. *Fairchild Hiller Corp. v. Supervisor of Assessments for Washington County,* 267 Md. 519, 523, 298 A.2d 148 (1973) *(citing State Tax Comm'n v. C. & P. Tel. Co.,* 193 Md. 222, 66 A.2d 477 (1949)). "Absent affirmative evidence in support of the relief being sought or an error apparent on the face of the proceeding from which the appeal is taken, the decision, determination, or order from which the appeal is taken shall be affirmed." T.G. § 13–528(b).

## II. Standard of Review

■ A final order of the Tax Court is subject to judicial review as provided in sections 10–222 and 10–223 of the State Government Article ("S.G."). T.G. § 13–532(a)(1). "Any party to the Tax Court proceeding, including a governmental unit, may appeal a final order of the Tax Court to the circuit court."

T.G. § 13–532(a)(2). The inquiry in this Court on appeal is not whether the circuit court erred, but rather whether the administrative agency erred. *Consumer Prot. Div. v. Morgan*, 387 Md. 125, 160, 874 A.2d 919 (2005). In reviewing the agency's decision, we apply the same standard applicable to the circuit court.

"[J]udicial review of decisions of the Maryland Tax Court is severely limited." *Comptroller of the Treasury, Income Tax Div. v. Diebold, Inc.*, 279 Md. 401, 407, 369 A.2d 77 (1977). The court may:

(1) remand the case for further proceedings;

(2) affirm the decision of the agency; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted, or

(vi) is arbitrary and capricious.

S.G. § 10–222(h).

S.G. section 10–222(h)(v) embodies the substantial evidence standard of review. *Spencer v. Md. State Bd. of Pharmacy*, 380 Md. 515, 529, 846 A.2d 341 (2004). "That provision grants a court authority to overrule an agency's factual finding only when the finding is 'unsupported by competent, material, and substantial evidence in light of the entire record as submitted.'" *Id.* at 529, 846 A.2d 341 *(quoting* S.G. § 10–222(h)(v)).

The substantial evidence standard of review asks "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." *Fairchild Hiller*

*Corp.,* 267 Md. at 521–522, 298 A.2d 148 *(quoting Ins. Comm'r v. Nat'l Bureau,* 248 Md. 292, 309–310, 236 A.2d 282 (1967)). A reviewing court "must review the agency's decision in the light most favorable to it. . . . The agency's decision is prima facie correct and presumed valid and . . . it is the agency's province to resolve conflicting evidence." *Md. Aviation Admin. v. Noland,* 386 Md. 556, 571–72, 873 A.2d 1145 (2005) *(quoting Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376 (1999)) (internal citations omitted).

## III.  Sufficiency of Evidence

### A.  *Appellant Was Not Required To Produce Affirmative Evidence*

Appellant's tax assessment is prima facie correct.  TG § 13–411.  The burden is upon the taxpayer to show error in the assessment.  *Fairchild Hiller Corp.,* 267 Md. at 523, 298 A.2d 148 *(citing State Tax Comm'n v. C. & P. Tel. Co.,* 193 Md. 222, 66 A.2d 477 (1949)).  "Absent affirmative evidence in support of the relief being sought or an error apparent on the face of the proceeding from which the appeal is taken, the decision, determination, or order from which the appeal is taken shall be affirmed."  T.G. § 13–528(b).  Accordingly, appellant had no duty to present affirmative evidence supporting its assessment, in addition to the assessment itself and the underlying methodology, but rather, the burden was on appellee to show error or to present evidence that appellant's assessment was incorrect.

Under federal tax practice, the burdens of production and persuasion are similarly on the taxpayer.  *See* T. Ct. Rule 142(a) ("The burden of proof shall be upon the petitioner.").  Several factors support this rule:  "the usual evidentiary rule imposing proof obligations on the moving party, . . . the presumption of administrative regularity, the likelihood that the taxpayer will have access to the relevant information, and the desirability of bolstering the recordkeeping requirements of the [Tax] Code."  *United States v. Rexach,* 482 F.2d 10, 16

(1st Cir.1973). These factors apply equally in the context of Maryland tax law.

Appellee relies upon the federal tax case, *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), for the proposition that the presumption of correctness does not apply when the assessment authority provides no basis at all for the assessment. In *Janis,* the Supreme Court examined whether a tax assessment that relied exclusively on illegally seized evidence could be sustained if the illegally seized evidence could not be used to prove the tax liability. There, the court ruled that when the assessment was "naked" and "without any foundation whatsoever," "the determination of tax due then may be one without rational foundation and excessive, and not subject to the usual rule with respect to the burden of proof in tax cases." *United States v. Janis,* 428 U.S. 433, 441, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (internal quotation marks and citations omitted).

■■■ The Maryland Court of Appeals applied a similar analysis in *Balt. County v. Kelly,* 391 Md. 64, 891 A.2d 1103 (2006), an appeal from a decision by the Worker's Compensation Commission. Like section 13–411 of the Tax–General Article, the Worker's Compensation statute provides that the Worker's Compensation Commission's decision is prima facie correct on appeal and that the party seeking reversal has the burden of proving that the Commission's decision was wrong.

The provision that the decision of the Commission shall be *"prima facie* correct" and that the burden of proof is upon the party attacking the same does not mean, therefore, that if no facts are established before the Commission sufficient to support its decision, that there is any burden of factual proof on the person attacking it, for the decision of the Commission cannot itself be accepted as the equivalent of facts which do not exist. . . . On the other hand, where the decision of the Commission involves the consideration of conflicting evidence as to essential facts, or the deduction of permissible but diverse inferences therefrom, its solution of such conflict is presumed to be correct, and the burden of

proof is upon the party attacking it to show that it was erroneous.

*Kelly,* 391 Md. at 75–77, 891 A.2d 1103.

These decisions did not require appellant to produce evidence at the hearing before the Tax Court, affirmatively supporting its assessment, in addition to proving the assessment itself. The question is whether there is substantial evidence in the record as a whole to support the Tax Court's decision.

### B. *Substantial Evidence Regarding Non–IFTA Vehicles*

Appellee argues that appellant never produced any evidence to show that appellee's non-IFTA vehicles were ever fueled from bulk storage tanks.

#### 1. *Evidence Supporting the Assessment*

■ There was substantial evidence in the record to support appellant's assessment. Richard Sine, a Field Compliance Inspector for the Comptroller's Office, testified that on February 7, 2003, two of appellee's drivers, operating IFTA vehicles, were found using untaxed dyed fuel on the highway during a random inspection.

. Bill Resh, a loader operator for appellee, testified that appellee had two fuel tanks at its facility, one storing dyed fuel for equipment, and one storing clear, on-road fuel, for trucks. Mr. Resh testified that drivers were instructed to use clear, on-road fuel for trucks. In 2003, at the time of the incident, drivers had keys to both tanks. Mr. Resh testified that, generally, if the clear tank ran out of fuel, he would call Tom Clise and get money for drivers to stop and get fuel along the way.

Christopher Bulyard, a truck driver for appellee, testified that in early February, 2003, he arrived at appellee's yard and needed to fuel up. There was no fuel in the clear fuel tank, so Mr. Bulyard and another driver, Jim Fry, got fuel out of the dyed fuel tank. The next day, Mr. Bulyard was pulled over for a fuel inspection. He told the officer he was running dyed

fuel. Another officer came to test the fuel, and issued Mr. Bulyard a ticket. Mr. Bulyard also testified that he had never used his own money to purchase fuel for the truck while he was out on the road. Mr. Bulyard testified that this incident was the only time he ever used dyed fuel in his truck.

James Fry, another driver for appellant, testified that there was a time in February of 2003, when he arrived at the yard and needed to fill up, but the clear fuel tank was empty. After Mr. Fry failed in his effort to contact Mr. Clise, he filled one tank of his truck with dyed fuel. The next day, Mr. Fry was pulled over for fuel inspection. Mr. Fry testified that this was the only time he ever drove with dyed fuel.

David Benson, the field auditor that performed the audit resulting from appellee's two fuel citations, testified that he reviewed all of appellee's records and that those records were inadequate to support the fuel usage appellee reported. Mr. Benson audited appellee beginning on April 28, 2003, including both appellee's IFTA and non-IFTA fuel accounts. He testified that he examined all of the records that appellee made available to him, including fuel purchase tickets, monthly records of "stickings" of their tank, and the recap of the fuel usage for both the on and off-road fuel. He testified that appellees produced no records of back-hauling when asked during the audit.

Mr. Benson testified that appellee's inventory and fuel usage records were inadequate because "[t]here was no back-up detail that could be provided at audit to support the recap figures on the fuel recaps. And the inventory records were questionable based on the tank sizes that were reported." Because appellee's calculations were based on fuel tanks of different sizes than the fuel tanks actually used, Mr. Benson testified that the difference had an impact on the accuracy of inventory accounting. He also testified that because appellee did not have a totalization meter during the audit period, he was unable to verify that the gallons recorded on the log were accurate. Appellee did not offer any other supporting documentation justifying the fuel usage, such as daily fuel tickets.

Mr. Benson cited numerous instances in which vehicles reported going several thousand miles without refueling and attaining impossible gas mileage as evidence that the records appellee offered during the audit were likely inaccurate.

There was nothing in the evidence to differentiate between IFTA and non-IFTA vehicles, in terms of source of fuel usage, and thus no basis for requiring the use of different methodologies in estimating the tax due. Mr. Benson, while using the same methodology, made separate calculations for IFTA versus non-IFTA vehicles.

This evidence was sufficient to support the Tax Court's order upholding appellant's assessment.

## 2. *Appellee's Evidence That Appellant's Assessment Was Incorrect*

The only evidence appellee introduced to demonstrate that appellant's assessment was incorrect was the testimony of Mr. and Mrs. Clise, the two principals of appellee. The Tax Court held that the evidence was insufficient.

Mrs. Clise, co-owner of appellee company, testified that she was responsible for all of the office work, the paper work, and the reports for appellee. She testified that one of her responsibilities was filling out the motor fuel reports that were sent to the State for the purpose of paying taxes on motor fuel. She testified that she thought she was reporting the number of gallons that appellee actually used. She also testified that appellee had been audited about every two years. Mrs. Clise testified that before the incident that is the subject of this appeal, appellee had never had any dispute with appellant about audit results.

Mrs. Clise also testified about the process she and Mr. Clise used to report fuel usage. She testified that they calculated in-state versus out-of-state mileage for IFTA vehicles. She also testified that appellee did not keep records on non-IFTA vehicles because the drivers were responsible for purchasing fuel for those trucks unless appellee had to send them to a specific place for a specific reason.

Charles Clise, co-owner and principal of appellee, testified that the procedure, when the clear tank ran out of fuel, was to have the drivers purchase clear fuel on the road. Mr. Clise also testified about the process he and Mrs. Clise used to determine the amount of fuel appellee used and the amount of fuel each truck used. Mr. Clise testified that there were times during the audit period when Mr. Clise knew, because of the amount of fuel missing from appellee's fuel tanks, that appellee had used more total fuel than the drivers were reporting. Mr. Clise testified that, when such incidents occurred, appellee reported the amount actually used rather than the amount shown.

Over objection, a summary chart of gallons used and miles driven, prepared by appellee's counsel, was entered into evidence. Mr. Clise testified that the totals "came right off our records," and that the charts accurately reflected appellee's fuel usage.

Mr. Clise testified that the substantial changes in gas mileage from month to month could be explained by a variety of causes. Drivers ran the trucks all night on very cold nights, thereby reducing gas mileage. Sometimes, the trucks carried nothing back from jobs, and other times, the trucks carried loads or "backhauls" back from jobs, resulting in lower than average miles per gallon for that period. The number of times a driver fueled the truck per month affected the gas mileage. Further, Mr. Clise testified that one driver was caught stealing fuel from appellee's trucks.

The credibility of witnesses and the weight of the evidence are for the Tax Court. Even the evidence offered by appellee provides some support for the assessment relating to the non-IFTA vehicles, as Mrs. Clise testified that appellee provided the fuel for usage other than for commuting by the drivers between home and job.

### Comptroller's Audit Method Authorized By Law

■ Under section 13–406 of the Tax–General Article, "If a person fails to keep adequate records required under § 9–309

of this article, the Comptroller may: (1) compute the motor fuel tax due by using the best information in the possession of the Comptroller; and (2) assess the tax due." Appellant did that, computing the taxes owed by calculating a miles per gallon figure, and applying it to the number of miles driven by appellee's vehicles.

Appellee contends that appellant was not authorized by section 13–406 to base its assessment upon a methodology that discredited taxpayer's records. Appellee argues that the statute's predicate, that a person "fails to keep" records is not met by records that are merely "inadequate." Appellee points to section 13–405, relating to assessment of the motor carrier tax, which specifically addresses both "inadequate records," and "no records kept" and compares it to section 13–406, which specifically references only "records not kept."

The Revisor's Note to section 13–405 reveals that the differentiation between "inadequate records" and "no records kept" in 13–405 is intended to distinguish between the two different means of calculating the motor carrier tax under section 13–405(a) and (b). Under section 13–405(a), if a taxpayer keeps inadequate records, the Comptroller may compute the motor carrier tax by using a miles per gallon factor based on the best information available to the comptroller. In contrast, under 13–405(b), if a taxpayer keeps no records, the Comptroller may compute the tax by using a miles per gallon factor based on the use of 40 gallons of motor fuel for each motor vehicle on each day during the period for which records were not kept.

Because section 13–406 provides only one method of calculating the motor fuel tax when a taxpayer fails to keep the records required under section 9–309, no distinguishing language between "inadequate records" and "no records" was necessary.

Further, appellee's argument that section 13–406 applies only when no records are kept, and not when merely "inadequate records" are kept leads to absurd results. If section 13–406 did not also apply to inadequate records, then special

fuel users would have an incentive to keep incomplete or inaccurate records because the Comptroller would have no recourse to estimate the amount of taxes owed so long as the taxpayer had some records, no matter how incomplete or inaccurate. The Comptroller would have no means of recovering any taxes avoided by these incomplete or sloppy records. The Tax Court's application of the statute was therefore in accordance with legislative intent.

Mr. Benson testified that appellee's inventory and fuel usage records were inadequate because "[t]here was no back-up detail that could be provided at audit to support the recap figures on the fuel recaps." Mr. Benson cited numerous inaccuracies in the records that were provided. Appellees did not offer any other supporting documentation justifying the fuel usage, such as daily fuel tickets.

Because appellee failed to keep adequate records as required by section 9–309, appellant was authorized to "compute the motor fuel tax due by using the best information in the possession of the Comptroller." T.G. § 13–406.

Mr. Benson testified that his audit led to an initial assessment of $34,589.40, a penalty of $3,358.94, and interest of $6,792.42, totaling $43,240.76. Mr. Benson testified that he arrived at this figure by developing a "mile per gallon factor," stating:

> They were cited for having dyed fuel in the tanks—in the truck tanks on 2/7/03. Beginning 2/10/03 through the period of 3/31/03, a mile per gallon on the qualifying motor vehicles were developed. And it was developed using total odometer miles and total fuel placed into these units during that time frame. Now, that includes both bulk storage fuelings, credit was given for bulk storage fuelings, and any retail purchases made over the road.
>
> * * *
>
> We took the mileage that was driven each month by the qualifying IFTA units and divided it by the mile per gallon factor to determine the amount of fuel on which tax is due. Then credit was given for any tax that was paid.

The mile per gallon figure used was 4.27. The mile per gallon figures offered to appellant by appellee for that same period averaged about 5.7.

Appellee protested this initial audit. First, it argued that they used smaller tires on the vehicles, which caused them to get a higher mile per gallon figure. Further, appellee argued that it had let the trucks run overnight during cold nights in the months of January, February and March, which caused the fluctuation in miles per gallon.

When appellant's office reexamined the miles per gallon figure after the appeal, examining April, May, and June of 2003, when appellees were not running the trucks overnight, it reached a new mile per gallon figure of 5.07. Mr. Benson testified that this estimate was high in comparison to the miles per gallon figures that similar companies got under similar circumstances, which usually ranged from 4 to 4.7 miles per gallon. Mr. Benson testified that he had confidence that this revised assessment represented the minimum tax appellee owned. In the reassessment, Mr. Benson also included the six additional non-IFTA vehicles, for which no records were kept. Mr. Benson made separate miles per gallon calculations for each of these vehicles. He determined that there were a total of 63,513 gallons of gas on which no tax had been paid. The recalculated tax came to $15,401.90, interest of $3,462.00, and penalty of $1,540.19, totaling $20,409.00.

Appellant's determination that appellee's records were inadequate was supported by the evidence. Further, since appellant reviewed all of the information provided to it by appellees and used a statutorily permissible method of calculating an assessment, the trial court did not abuse its discretion in upholding appellant's assessment.

### Jury Trial

Finally, appellee claims that the Tax Court abused its discretion in denying appellee's request for a jury trial. Under section 13–526(a) of the Tax–General Article, "on the request of a party, the Tax Court may submit an issue of fact

to a circuit court for a jury trial." As appellee concedes, the decision to grant or deny a request for a jury trial lies within the discretion of the Tax Court. *Allnutt v. Comptroller,* 61 Md.App. 517, 487 A.2d 670 (1985) (holding that court did not abuse its discretion in denying jury trial where main issues were questions of law), cert. denied, 303 Md. 295, 493 A.2d 349 (1985); *see also Md.-Nat'l Capital Park and Planning Comm'n v. Silkor Dev. Corp.,* 246 Md. 516, 229 A.2d 135 (1967) (holding that "may" conveys discretion unless the context or purpose of the statute shows that it is meant otherwise). "An abuse of discretion is said to occur where no reasonable person would take the view adopted by the trial court, or when the trial court acts without reference to any guiding rules or principles." *Stidham v. Morris,* 161 Md.App. 562, 566, 870 A.2d 1285 (2005).

Appellee claims that the Tax Court abused its discretion in denying a jury trial because the case concerned primarily factual issues. However, section 13–526 does not provide that the Tax Court *must* provide a jury trial when there are questions of fact. Rather, it leaves the determination of whether to submit an issue of fact to a jury entirely within its discretion.

As was the situation in *Allnutt,* 61 Md.App. at 527, 487 A.2d 670, the Tax Court, in the case before us, gave no reasons for denying a jury trial. As in *Allnutt,* appellee has provided no persuasive reason why the Tax Court abused its discretion. "The exercise of a judge's discretion is presumed to be correct, he is presumed to know the law, and is presumed to have performed his duties properly." *Lapides v. Lapides,* 50 Md.App. 248, 252, 437 A.2d 251 (1981). Nothing in the record below indicates error or irregularity in the Tax Court's decision not to grant a jury trial; therefore, we will affirm the judgment of the Tax Court.

**JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY REVERSED TO THE EXTENT THAT IT REVERSED THE TAX COURT; OTHERWISE AF-**

708

FIRMED. COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT.