974 A.2d 941

David B. SIEGEL, et al., Co–Personal Representatives
of the Estate of Edwin M. Cohn

v.

COMPTROLLER OF MARYLAND.

No. 0383, Sept. Term, 2007.

Court of Special Appeals of Maryland.

July 2, 2009.

412

Deanna L. Peters (Jeffrey M. Schwaber, Stein, Sperling, Bennett, DeJong, Driscoll & Greenfeig, PC, on the brief), Rockville, for appellant.

David K. Hayes (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: SALMON, JAMES R. EYLER and MEREDITH, JJ.

MEREDITH, J.

In this case, the appellants—co-personal representatives of the estate of the late Dr. Edwin M. Cohn—challenge the Maryland Tax Court's ruling that upheld the imposition of inheritance taxes upon several gifts made by Dr. Cohn during the two years preceding his death. The controlling question is whether the Tax Court correctly interpreted and applied the statute that extends the Maryland inheritance tax to inter vivos gifts which were "made in contemplation of death." We shall hold that there is substantial evidence in the record to support the Tax Court's finding that the gifts made by Dr. Cohn were made in contemplation of death. Accordingly, we will affirm the judgment of the Circuit Court for Montgomery County, which affirmed the ruling of the Tax Court.

## Key Statutory Provisions

Section 7–202 of Md.Code (1988, 2004 Repl. Vol.), Tax–General Article ("TG"), establishes an inheritance tax, and provides that, subject to certain exemptions that have no application to the present case, "a tax is imposed on the privilege of receiving property that passes from a decedent and has a taxable situs in the State." The phrase "property that passes from a decedent" is defined in TG § 7–201(d)(1)(iii) to include donative transfers "made in contemplation of death" as follows:

(d) *Property that passes from a decedent.*—(1) **"Property that passes from a decedent" includes:**

\* \* \*

(iii) except for a bona fide sale for an adequate and full consideration in money or money's worth, **property that passes by an inter vivos transfer by a decedent, in trust or otherwise, if:**

 1. **the transfer is made in contemplation of death;** [or]

 2. the transfer of a material part of the property of the decedent in the nature of a final disposition or distribution is made by the decedent within 2 years before death and is not shown to not have been made in contemplation of death; . . . .

(Emphasis added.)

### Facts and Procedural Background

Following the death of Dr. Cohn, the Register of Wills for Montgomery County concluded that certain gifts made by the doctor during the last two years of his life were subject to the inheritance tax because those gifts were within the ambit of TG § 7–201(d)(1)(iii). Following a de novo hearing, the Tax Court upheld the ruling of the register of wills.

The gifts that are the subject of this dispute were made on two separate dates. On August 1, 2002, at the age of 87, Dr. Cohn transferred to his two nephews an ownership interest in a limited partnership that was an investment holding company that owned primarily municipal bonds. The total value of the interest given to the two nephews on the date of the transfer was $861,668, such that the value of each gift to a nephew was $430,834. On January 15, 2003, Dr. Cohn made a gift of $55,000 to each of his seven great-nieces and great-nephews by establishing tuition savings accounts known as "529 Plans" to fund the children's education. The total amount of these seven gifts was $385,000.

Shortly after undergoing surgery for an incarcerated hernia in November 2003, Dr. Cohn suffered a heart attack and died on November 22, 2003, at the age of 88. His two nephews, David Siegel and Robert Siegel, were appointed co-personal representatives of Dr. Cohn's estate.

In connection with the administration of the estate, the nephews filed with the Register of Wills for Montgomery County an information report that required an answer to the following question:

Except for a bona fide sale or transfer to a person exempted from inheritance tax pursuant to [Maryland] Code, Tax General Article, [Section] 7–203, within two years before death did the decedent make any transfer of any material part of the decedent's pr[o]perty in the nature of a final disposition or distribution, including any transfer that resulted in joint ownership of property?

The nephews answered "Yes" to the question, and listed the two gifts of limited partnership interests made August 1, 2002, as well as the seven gifts made to establish the 529 Plans on January 15, 2003. But the co-personal representatives also attached to the information report a memorandum in which they argued to the register of wills that no inheritance tax should be assessed on account of these gifts. They pointed out that their uncle, the decedent, "despite being 87 at the time of the gifts (he was 88 at the time of death in November, 2003) was in good health. There was no suggestion that his time of death was approaching." Further, they noted that he did not need the assets he gave away; "it is expected that the total value [of the estate] will exceed $2 million, more than sufficient to meet his personal financial obligations." Their argument continued: "Considering the decedent's overall net worth and taking each gift separately, none can be considered to be a gift of a material portion of the decedent's estate." Further, they pointed out, "[e]ven if" any of the gifts could be "considered 'material,' the inheritance tax can only be assessed against the transfers if they were made by the decedent in contemplation of his death." The establishment of the seven college savings plans was based upon a desire to enable

the contributions to grow income tax free, they said, and "[b]y taking advantage of this provision of the federal tax law, the decedent was able to set aside additional funds for the anticipated college education costs of his family members." And even though the two gifts to the decedent's nephews were more substantial in amount, "[t]aken separately[,] each gift [of a limited partnership interest] represented a transfer of less than approximately 18% of the decedent's net worth at the time of the gift."

Moreover, the memorandum stated, "it can be established that neither gift was made with any apprehension of an impending death. The decedent passed away from a sudden heart attack at the age of 88," but "[p]rior to his death the decedent enjoyed an active life. . . ." There was a life purpose for Dr. Cohn to make the gifts, the nephews asserted: "The motivation of the gifts was to share with his family some of the financial success that the decedent had accumulated during his life. [Making t]he gifts during his lifetime allowed the decedent the opportunity to enjoy these family members' financial security provided in part by his generosity."

The register of wills rejected the arguments made by the co-personal representatives, and, pursuant to TG § 7–214, sent them an invoice for inheritance taxes due at the rate of 11.1111% of the value of the gifts that had been listed on the information report. On July 22, 2004, the estate paid $95,740.79 on account of the transfers of the limited partnership interests, and $42,777.74 on account of the transfers to the 529 Plans.

The co-personal representatives then filed a claim for a refund of the $138,518.53 in taxes they claimed to have "erroneously paid," arguing to the register of wills once again that the transfers were not subject to the inheritance tax. The register denied the refund claim, stating "we believe that the tax was properly assessed."

At that point, the co-personal representatives appealed to the Maryland Tax Court, seeking a reversal of the register's ruling. *See* TG § 13–510(a)(3) (an aggrieved party "may

appeal to the Tax Court from … an inheritance tax determination by a register"). Despite its name, the Tax Court is not part of the Maryland judicial branch, but is an administrative agency that is part of the executive branch. *See* TG §§ 3–101 *et seq.* In *Comptroller of the Treasury v. Johns Hopkins Univ.,* 186 Md.App. 169, 179–81, 973 A.2d 256 (2009), Judge Deborah S. Eyler outlined in detail the procedures governing appeals to the Tax Court and judicial review of that agency's decisions.

One distinctive aspect of appeals to the Tax Court is the limitation on its powers to alter the order that is the subject of its review, as set forth in TG § 13–528, which provides:

**§ 13–528. Disposition of cases.**

(a) *Powers.*—(1) The Tax Court shall have full power to hear, try, determine, or remand any matter before it.

(2) In exercising these powers, the Tax Court may reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to the Tax Court.

(b) *Limitation on powers.*—Absent affirmative evidence in support of the relief being sought or an error apparent on the face of the proceeding from which the appeal is taken, the decision, determination, or order from which the appeal is taken shall be affirmed.

During the course of the de novo hearing before the Tax Court, the co-personal representatives offered evidence that Dr. Cohn was not contemplating his imminent death at the time he made either of the inter vivos transfers that had been taxed by the register. They offered testimony from his financial advisor and from his primary care physician. At the conclusion of the evidentiary hearing, the judge delivered an oral opinion affirming the ruling of the register that the gifts were taxable. The Tax Court judge explained:

[W]e'll start with the statute: It says, at least in terms of what I need to determine, was this a material gift? Was it done within two years of his passing? And was it done in contemplation of death? Well, some parts of that are easy.

It was done within two years of his passing. That was the easy part.

Was it material? Well, if you add all of the gifts to the great-nieces and nephews, together with the gift of the Partnership shares to the two nephews, we are looking at a total of approximately a Million Dollars. At the time that these gifts were put together, it appears that Doctor Cohn's estate—well, I won't say estate—his total assets, at that point, were something just over Two Million Dollars. So, yes, this is a material gift. By the time he passed away, his remaining assets seem to have been almost Two Million Dollars, I'm assuming. Didn't have testimony at all that his remaining assets appreciated somewhat during those last two years of his life. But, yes, in my mind, that's more than sufficient for it to be a material gift.

The most significant issue, and what we talked about most of the time today, is whether or not this was done in contemplation of death. A very hard standard to try to deal with. Knowing what someone's motivations are when you can't talk to them is a difficult process. It certainly can be. The only way one can go to look at it is from circumstantial evidence from what the person was doing at the time, and what he had done in the past.

And then we've had some discussion as to whether or not this was part of a lifetime of giving. Whether Doctor Cohn spent his entire life making donations or gifts to his family. And we had testimony that he made substantial—though we didn't find exact amounts—substantial gifts to both of his nephews for their college and graduate school educations. And we don't have a lot of gift giving happening, except for family events when people got married, until his eighties when there was some discussion about the donation of an interest in some sort of a Partnership that occurred more than two years prior to his death, so I don't get any information on it. But I am surmising that he was in his eighties at some point when that occurred.

And then the gifts that were subject to today's hearing. I have a couple of things to say: The issue is contemplation of

death, not contemplation of imminent death. In spite of the fact that Doctor Cohn was in his eighties, I don't think he was contemplating imminent death. I don't believe that his doctors were contemplating imminent death, nor his family. That this heart attack was a bit of a surprise.

And the other thing that I can say is that it appears that the—well, clearly, there can be more than one motivation for any event. One of his motivations is that he wanted the education of his great-nieces and nephews assisted. I don't believe that Fifty-five Thousand Dollars will cover fully the cost of a four year education anymore, but at least he was doing his part to assist with this thing. Likewise, the donations of the Partnership shares to his nephews was because he wanted them to have the money. There's no other reason for making the donation, while the other reason, possibly. But that, clearly, was one of the reasons is he wanted them to have Four Hundred and Thirty Thousand Dollars worth of assets, more or less, for each of them.

Continuing, the statute puts the burden of proof on the Petitioners, if the gift is made within two years. Based on a couple of other facts about his life that I can tell, at the time these things occurred, he was more than eighty years old, he was suffering from increasing levels of dementia, but, according to the Doctor, he was able to function. In some ways, he was able to function quite well. He was highly interactive with members of the family and in the Assisted Care Facility. That he had a number of medical issues, but none of them were life threatening, and that family members had consulted with tax people and had determined that there were significant tax savings possibly made by making donations. That would, at least, prove to me that he knew that there was some possible tax savings to be made, not necessarily that was his prime motivation. And it also appears that he intended these dispositions to be final, that they were substituting in some part for doing it by way of a Will. That these were dispositions of funds that he did not

need. (INAUDIBLE) adequately took care of him financially through some other ways.

But this appears to be not part of a longstanding regular program of gifts. That this was a fairly late arriving plan to dispose of his assets. And if there was any doubt in my mind, the burden of proof being on Petitioners would seal the deal that they had not met their burden of convincing me that these distributions were not part of—were not in contemplation of death, at least as far as the statute's concerned. So I will be denying your request for a refund.

At this point in the proceedings, counsel for the nephews requested clarification on one issue, and the following colloquy took place:

[APPELLANTS' COUNSEL]: Your Honor, may I just ask you one thing for the record?

[THE JUDGE]: Sure.

[APPELLANTS' COUNSEL]: The request for refund dealt with two specific taxable events: one for the 529 Plans, and one for the Limited Partnership interest. I recognize that during the course of today, we talked about gifts in the aggregate, but there's certainly evidence of the distinction and the separation. Is your finding . . .

[THE JUDGE]: It's on both.

[APPELLANTS' COUNSEL]: . . . that the 529—of materiality on the 529 Plans in their own right as to each of the seven children, that each individual gift is a material gift?

[THE JUDGE]: My determination is that the seven gifts to the seven great-nieces and nephews were to be considered as a group.

[APPELLANTS' COUNSEL]: And that that group is material, separate and . . .

[THE JUDGE]: And Three Hundred and Eighty-five Thousand Dollars in total for that group was material even for Doctor Cohn's financial status.

The Tax Court's ultimate conclusion was that the gifts were transfers made in contemplation of death, even though that

finding was stated in an indirect manner: the co-personal representatives had not succeeded in "convincing [the judge] that these distributions were not ... in contemplation of death."

The co-personal representatives filed a petition for judicial review in the Circuit Court for Montgomery County. After that court affirmed the ruling of the Tax Court, the co-personal representatives appealed to this Court, as permitted by Md. Code (1984, 2004 Repl. Vol.), State Government Article, § 10–223(b). The standard of review applicable to such cases was described by Judge Eyler as follows in *Comptroller v. Johns Hopkins Univ., supra,* 186 Md.App. at 181–82, 973 A.2d 256:

Because the Tax Court is an administrative agency, its decisions are reviewed under the same appellate standards generally applied to agency decisions. *SDAT v. Consolidation Coal Sales Co.,* 382 Md. 439, 453 [855 A.2d 1197] (2004). We review the decision of the Tax Court, not the ruling of the circuit court on judicial review. *Comptroller v. Clise Coal, Inc.,* 173 Md.App. 689, 696–97 [920 A.2d 561] (2007). The Tax Court's factual findings are reviewed for substantial evidence in the record. *Id.* at 697 [920 A.2d 561]; SG § 10–222(h)(v). Under the substantial evidence test, a factual finding must be upheld if it is such that a reasoning mind reasonably could have found it from the agency record (here, the evidence before the Tax Court). *Dep't of Natural Res. v. Heller,* 391 Md. 148, 166 [892 A.2d 497] (2006); *Md. Aviation Admin. v. Noland,* 386 Md. 556, 571 [873 A.2d 1145] (2005). Even if the Tax Court does not state the reasons for its decision, reversal is not required "if the record discloses substantial evidence supporting the decision." *Bethlehem Steel Corp. v. Supervisor of Assessments of Baltimore County,* 38 Md.App. 543, 546 [381 A.2d 1185] (1978) (Wilner, J.).

Likewise, we review the Tax Court's mixed findings of fact and law for substantial evidence in the agency record. "[D]eterminations involving mixed questions of fact and law must be affirmed if, after deferring to the Tax Court's

expertise and to the presumption that the decision is correct, 'a reasoning mind could have reached the Tax Court's conclusion.' " *NCR Corp. v. Comptroller*, 313 Md. 118, 133–34 [544 A.2d 764] (1988) (in turn quoting *Comptroller v. NCR*, 71 Md.App. 116, 133 [524 A.2d 93] (1987)). We are not so constrained in our review of the Tax Court's decisions of law. *Ramsey[Ramsay], Scarlett & Co. v. Comptroller*, 302 Md. 825, 834 [490 A.2d 1296] (1985). Ordinarily, that review is *de novo. SDAT v. Consumer Programs, Inc.*, 331 Md. 68, 72 [626 A.2d 360] (1993). Yet, " '[e]ven with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.' " *Noland, supra*, 386 Md. at 572 [873 A.2d 1145] (quoting *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 69 [729 A.2d 376] (1999)).

This Court further noted, *id.* at 188–89, 973 A.2d 256, that "on substantial evidence review of the Tax Court's decision on a mixed question of law and fact, we give deference to the Tax Court's application of [the pertinent section of the Tax–General Article], not the Comptroller's, as the Tax Court is the agency charged with interpreting and applying the Maryland tax code."

## Discussion

The co-personal representatives challenge the ruling of the Tax Court on two grounds. First, they argue that the Tax Court erred in finding that the nine separate inter vivos gifts were "made in contemplation of death." As we shall explain more fully below, we conclude that there was substantial evidence in the record to support that dispositive finding. The co-personal representatives, as the appellants before the Tax Court, had the burden of proving that the register's ruling was incorrect. That meant that they had the burden of persuading the Tax Court judge that the gifts were not made in contem-

plation of death, and the Tax Court judge found they did not convince him of that.

Second, because the Tax Court judge made references to the presumption that applies to material gifts made during the two years before the donor's death, the appellants also contend that the Tax Court erred in concluding that the gifts were, in the language of TG § 7–201(d)(1)(iii)2, "the transfer of a material part of the property of the decedent." On this point, they argue that the Tax Court "erroneously compared the *collective* amount of the Inter Vivos Gifts to the remainder of Dr. Cohn's assets." But the qualifying language about materiality in subsection (d)(1)(iii)2—"a material part of the property of the decedent"—comes into play only with respect to whether a rebuttable presumption applies. TG § 7–201(d)(1)(iii)1 is not limited to a "material" transfer, but rather sweeps within its operation any transfer that "is made in contemplation of death." Because we conclude that there is substantial evidence in the record to support the Tax Court's finding that the gifts were made in contemplation of death, we need not reach the question of whether each gift was a material part of the property of the decedent to affirm the ruling of the Tax Court.

 The Tax Court judge said during the course of explaining his ruling, "if there was any doubt in my mind, the burden of proof being on Petitioners would seal the deal that they had not met their burden of convincing me that these distributions were . . . not in contemplation of death." We note first that the judge did not say that there *was* any doubt in his mind, nor did he state that his mind was in equipoise on this question and he was ruling against the co-personal representatives solely because of the tie-breaking burden of proof. Second, as noted above, the co-personal representatives, as the parties challenging the register's determination, *did* have the burden of proof in the Tax Court proceeding pursuant to TG § 13–528(b) ("Absent affirmative evidence in support of the relief being sought . . . the decision, determination, or order from which the appeal is taken shall be affirmed."). It was

their burden to persuade the Tax Court that the register had erroneously concluded the gifts were made in contemplation of death regardless of whether the rebuttable presumption under TG § 7–201(d)(1)(iii)2 was applicable. And, as we pointed out in *Comptroller v. Johns Hopkins Univ., supra,* 186 Md.App. at 181, 973 A.2d 256, "Even if the Tax Court does not state the reasons for its decision, reversal is not required 'if the record discloses substantial evidence supporting the decision.' *Bethlehem Steel Corp. v. Supervisor of Assessments of Baltimore County,* 38 Md.App. 543, 546, 381 A.2d 1185 (1978)."

Further, as an alternative reason for upholding the finding of the Tax Court, we are satisfied that the presumption of TG § 7–201(d)(1)(iii)2 was applicable to each of the gifts in this case because each gift was a "transfer of a material part of the property of the decedent in the nature of a final disposition ... within 2 years before [the decedent's] death." The co-personal representatives argue that the Tax Court erroneously aggregated all of the gifts, and they further contend that none of the gifts, if considered individually, constituted a "material part of the property of the decedent."

 We agree with the co-personal representatives that each gift must be evaluated individually, and that, to the extent the Tax Court combined the value of the gifts when assessing the materiality of the transfers, that was an error (although a harmless error in this case). The plain language of the TG § 7–201(d)(1)(iii) addresses "property that passes by *an* inter vivos transfer ... if ... *the* transfer is made in contemplation of death." (Emphasis added.) Such use of singular articles indicates a legislative intent to impose the inheritance tax on individual gifts. Moreover, individual consideration of the donative transfers is consistent with the statutory scheme that imposes the tax "on the privilege of *receiving* property that passes from a decedent." TG § 7–202 (emphasis added). That privilege is enjoyed by the recipients on an individual basis. And an exemption set forth in TG § 7–203(g) applies to individual recipients: "The inheritance tax does not apply to the receipt of property that passes from a

decedent to any 1 person if the total value of the property does not exceed $1,000."

Our interpretation of the statute is further supported by the fact that, prior to the adoption of the Tax–General Article in 1988 as part of the comprehensive revision of the Maryland Code—*see* 1988 Laws of Maryland, Chapter 2—the predecessor code provision from which TG § 7–201(d)(1) was "derived without substantive change" was Md. Code (1957), Article 81, § 151, and that statute used similar singular references with respect to "[a]*ny* transfer of a material part of his property, in the nature of *a* final disposition." (Emphasis added.) Article 81, § 151 also included a safe harbor exemption for individual gifts to any one person, as follows: "Provided, however, that when the total value of any property, or interest therein, passing to any one person shall be one hundred and fifty dollars or less, the same shall be exempt from the payment of any tax under the provisions of this subtitle."

■■ Even when the nine inter vivos transfers that are the subject of this appeal are analyzed on an individual basis, however, we conclude that the gifts of $55,000 or more were within the scope of the inheritance tax. We reject the appellants' argument that the question of materiality must be answered solely by comparing the size of the specific gift to the overall net worth of the donor. If the inheritance tax were applicable only to transfers that constituted a large percentage of a wealthy person's estate, very large sums of money and other assets could pass tax-free from rich individuals to their collateral relatives whereas relatively paltry sums transferred by the not-so-rich would be subjected to the tax. It would not be rational for the legislature to adopt such a tax scheme, and we are obligated to construe the language in a statute in a manner that is rational and does not produce an absurd result.

Further, as noted above, the version of the inheritance tax statute in effect immediately before the comprehensive code revision in 1988 exempted only transfers with a total value of $150 or less, rather than exempting any specific percentage of

the decedent's total wealth. And the current exemption of $1,000 per recipient, as set forth in TG § 7–203(g), is also some indication of what the legislature considered a material amount in this context. Further, the exemption in TG § 7–203(h) for property that passes under a "small estate"—defined in Maryland Code (1974, 2001 Repl. Vol.), Estates and Trusts Article, § 5–601, as an estate in which the property subject to administration has a value of $30,000 or less—reflects a legislative intent to impose the inheritance tax on collateral bequests in excess of $1,000 that are made in connection with estates exceeding $30,000.

Consequently, even though each $55,000 gift by Dr. Cohn may have been only two to three percent of his total net worth, any gift of that magnitude in 2002 or 2003 would constitute, in our view, a material part of a donor's estate for the purpose of determining whether the inheritance tax was applicable. The legislature has not provided any bright line test for determining how large a transfer must be in order to constitute a "material part of the property of the decedent," and we do not need to determine in this case where that line might lie. But we have no question that the $55,000 gifts were within the scope of transfers that the legislature intended to cover and tax when it used the term "material" in TG § 7–201(d)(1)(iii)2. Clearly, the gifts would have been taxable if made pursuant to testamentary bequests. We do not need to remand this case for reconsideration of this point by the Tax Court because gifts of that magnitude in 2003 were clearly material for purposes of the inheritance tax. Accordingly, it was not error for the Tax Court to consider that the appellants had the burden of proving that the various gifts were not made in contemplation of death.

■ Although the appellants argue earnestly that Dr. Cohn was a vigorous man who had no thoughts of death when he made the gifts, the Tax Court judge was not obligated to accept such testimony as ruling out the possibility that the octogenarian was at a point in life when he was contemplating his ultimate demise. The fact that Dr. Cohn was 87 years old

when he began transferring substantial assets to his next of kin might alone constitute substantial evidence sufficient to support the Tax Court's finding that the gifts were made in contemplation of death. *See Comptroller v. Johns Hopkins Univ., supra,* 186 Md.App. at 181, 973 A.2d 256 ("Under the substantial evidence test, a factual finding must be upheld if it is such that a reasoning mind reasonably could have found it from the agency record (here, the evidence before the Tax Court).").

But Dr. Cohn's medical records are also part of the record in this case, and they include the doctor's notes from his appointments with his internist, Dr. Ava Kaufman. The medical records, considered in a light most favorable to the appellee, would support a finding that Dr. Cohn's physical and mental health was rapidly declining by the time he made the gifts to his nephews. Dr. Cohn had congestive heart failure, which caused a swelling in his legs. Dr. Cohn also had prostate cancer, and the treatment for that condition caused unpleasant complications. He was taking medication for his blood pressure and depression, and was mildly anemic.

Dr. Cohn had progressive dementia, which Dr. Kaufman characterized as "moderate." His nephews admitted his dementia made that him "fuzzy" at times. In March of 2002, Dr. Kaufman noted that Dr. Cohn's memory was "getting worse" and the impact of his prostate cancer was "bad." In October 2002, Dr. Kaufman noted that his memory "continues to decline," and he was "losing more + more function." She also admitted on cross-examination at the Tax Court hearing that Dr. Cohn was "in a state of decline."

In December 2002, Dr. Cohn fell in his apartment in the assisted living facility, and fractured his hip. As a result, he had hip surgery, but never fully recovered the ability to walk unassisted. Dr. Kaufman's discharge summary dated December 30, 2002, stated:

[Dr. Cohn's] medical problems include:

1. Coronary artery disease status post bypass graft surgery.

2. Prostate cancer which is being followed conservatively.

3. Congestive heart failure which is well compensated.

4. Most significantly, Alzheimer-type dementia.

The discharge summary noted that the patient's physical and occupational therapy "has been limited by his dementia." By May of 2003, Dr. Cohn had lost interest in rehabilitation. His physical therapist's discharge summary dated May 29, 2003, stated: "The patient quite simply lost interest in working to achieve his rehabilitation goals. He did not want to walk or to exercise or pursue any functional goal. Given this reality, there is little point in continuing physical therapy."

The medical evidence in the record, considered in a light most favorable to the appellee, supports the Tax Court's conclusion that the gifts were made in contemplation of death.

Further, the evidence regarding Dr. Cohn's history of gift-giving, when viewed in a light most favorable to the appellee, also provides substantial evidence that supports the Tax Court's finding that the gifts made on August 1, 2002, and January 15, 2003, were motivated by the doctor's contemplation of his death. Because Dr. Cohn never had children of his own, he had great affection for his two nephews. When the nephews were young, they lived with their parents in Lancaster, Pennsylvania, and Dr. Cohn saw them frequently, giving them clothes and sports equipment and taking them to football and baseball games. Dr. Cohn gave his nephews gifts of stock worth a few thousand dollars when they were teenagers. When his nephews were older, Dr. Cohn helped them with college tuition, and then tuition for medical and law school. Dr. Cohn also paid for one nephew's rehearsal dinner when that nephew got married, and gave the other nephew's children one-time gifts of about $10,000 or $11,000 per child, plus additional smaller gifts in unspecified amounts. This evidence, when viewed in a light most favorable to the appellee, presented such a stark contrast to the million dollars worth of gifts Dr. Cohn distributed during a six month period when he was 87 years old, that the lifelong history of only modest gift-giving also provided substantial evidence to support the Tax

Court's finding that the gifts made on August 1, 2002, and January 15, 2003, were motivated by the doctor's contemplation of his death.

Given that finding, it was not error for the Tax Court to uphold the imposition of inheritance taxes on the inter vivos gifts.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**